State v. Nerzinger.

---

## THE STATE v. ALBERT NERZINGER, Appellant.

### Division Two, May 18, 1909.

1. INDICTMENT: Mayhem: Throwing Acid: Manner. An indictment charging defendant with putting out the eyes and burning another with sulphuric acid is not bad because it does not give a description of the character of sulphuric acid, or state how it was used, whether by throwing it in her face or throwing her into it. The manner of applying the acid to her eyes was immaterial so long as by its use defendant put out her eyes feloniously and with his malice aforethought.

2. ————: ————: In Words of Statute. Where the offense is a statutory one, and the indictment uses all the essential words of the statute, with sufficient other allegations to individuate the offense, it is sufficient.

3. INSTRUCTION: Circumstantial Evidence: Impeachment of Witness. It is only when the State relies upon circumstantial evidence alone that an instruction on circumstantial evidence should be given; and where two witnesses for the State positively identify the defendant as the offender, and neither is successfully impeached, there is no room in the case for such an instruction. [Distinguishing State v. Woolard, 111 Mo l. c. 256.]

4. ———: **Definition of Reasonable Doubt.** The court instructed the jury that, "If upon all the evidence you have a reasonable doubt of the defendant's guilt, you should acquit; but a doubt to authorize an acquittal upon that ground, ought to be a substantial doubt touching the defendant's guilt, and not a mere possibility of his innocence." Another instruction given for the State read: "A reasonable doubt is a doubt based on reason, and which is reasonable in view of all the evidence. And, if, after an impartial comparison and consideration of all the evidence, you can candidly say that you are not satisfied of defendant's guilt, you have a reasonable doubt; but if after such impartial consideration of all the evidence you can truthfully say that you have an abiding conviction of the defendant's guilt—such a conviction as you would be willing to act upon in the more weighty and important matters relating to your own affairs—then you have no reasonable doubt." *Held*, that the latter instruction was entirely unnecessary, but it cannot be said to have been prejudicial to defendant.

5. ———: **Sulphuric Acid: Declared a Corrosive Substance.** Courts do not require proof of matters of common knowledge. It would not have been error for the court to have instructed the jury that sulphuric acid was a corrosive substance; but the instruction in this case left it to the jury to determine whether the sulphuric acid, thrown into the face and eyes of the prosecutrix, was a corrosive substance.

6. ———: ———: **Character and Defendant's Knowledge of Character.** An instruction which required the jury to find that the defendant, beyond a reasonable doubt, feloniously, on purpose, and of his malice aforethought, made an assault upon Lena, with the intent then and there to maim and disfigure her, and in pursuance to such intent did then and there wrongfully, wilfully and with malice aforethought cast and throw into the eyes of said Lena a quantity of sulphuric acid and that by reason of the throwing of such acid the eyes of said Lena were destroyed or burned out by said acid, and that if they found these facts then they would find him guilty, is entirely correct, and it was not necessary to qualify it by requiring the jury to find that the acid was of a character reasonably calculated to produce the result called for by the instruction, or that defendant knew its character.

Appeal from St. Louis City Circuit Court.—*Hon. Hugo Muench*, Judge.

**AFFIRMED.**

*Thomas B. Harvey* for appellant.

(1) The court should have given the instruction on circumstantial evidence requested by defendant, the direct evidence having been thoroughly discredited and impeached. State v. Woolard, 111 Mo. 256; State v. Crone, 209 Mo. 330; State v. Robinson, 117 Mo. 649. And if the instruction was not correctly drafted, the court's duty was to give a correct one. State v. Clark, 147 Mo. 20; State v. Reed, 154 Mo. 122; State v. Hendricks, 172 Mo. 654. (2) The last instruction given by the court and attempting to define a reasonable doubt is not correct. State v. Owens, 79 Mo. 632; State v. Young, 105 Mo. 639. (3) The first instruction incorrectly authorizes the jury to convict simply if they find that the defendant threw sulphuric acid into the face, regardless of the character of the substance or defendant's knowledge of its character. (4) The second instruction assumes that sulphuric acid is a corrosive substance and relieves the jury of determining its character, and authorizes them to find from its use an intent to destroy the eyes without the jury's finding the character of the substance or defendant's knowing it. State v. Myers, 198 Mo. 264; State v. Nueslein, 25 Mo. 111; State v. Harper, 69 Mo. 425. (5) Defendant's motion to quash the information should have been sustained. It does not describe the character of the weapon used, nor does it allege the means, to-wit, the burning, by which the mayhem was committed, to have been feloniously done.

*Elliott W. Major,* Attorney-General, and *James T. Blair,* Assistant Attorney-General, for the State.

(1) 1. The information is sufficient. Sec. 1846, R. S. 1899; Bishop's Directions and Forms, sec. 742; Tully v. People, 67 N. Y. 18; Sherwood's Com., p. 130; State v. Headrick, 179 Mo. 302; State v. Kyle, 177 Mo. 661. 2. The statutory description of the offense in a

case of this kind is sufficient. Greater "precision of description is as unnecessary as it is dangerous." State v. Briley, 8 Porter (Ala.) 474; Kitchens v. State, 80 Ga. 810; U. S. v. Gunther, 5 Dak. (Ter.) 243; Guest v. State, 19 Ark. 407; State v. Absence, 4 Porter (Ala.) 397; State v. Harroun, 199 Mo. 526. 3. Neither the particular mode of committing the offense nor the particular weapon or means used is material. "The real inquiry is whether a limb or member has been disabled." U. S. v. Scroggins, 27 Fed. Cases, 1000. And the particular means employed to commit the crime may be laid as one thing and proved as another. State v. Mairs, 1. N. J. L. 457. Under a statute making it a felony to wound, it was held that the statement of the means whereby the wound was inflicted was surplusage and did not confine the crown to the means stated. 3 Russell on Crimes, pp. 697, 698; Rex v. Owens, 1 Moody C. C. 206; Brigg's Case, 1 Lewin C. C. 63. 4. The information here charges defendant with feloniously, wilfully, on purpose and of his malice aforethought, putting out the eyes of Lena Wunsch. This is sufficient. Neblett v. State, 47 Tex. Crim. App. 574; Davis v. State, 22 Tex. Crim. App. 50; State v. Girkin, 1 Iredell's Law (N. C.) 121. 5. It was proper to describe the intent by charging conjunctively all the intents enumerated by the statute. The proof of any one will sustain the charge. Angel v. State, 2 Va. Cases 231. 6. The putting out of the eyes and the act of burning are separately charged to have been done with felonious intent. 7. The information clearly informs defendant of the charge against him and together with the judgment constitutes a complete bar to a second prosecution. The injury in this case is one which renders a second offense of the same character against the same person impossible. Many of the formalities required in an indictment under the act of coventry have been rendered needless by statutory changes and differences. Our statute defines the of-

fense and prescribes the punishment. Under this statute the information in the case at bar meets all reasonable requirements. The motions to quash and in arrest of judgment were properly overruled. (2) There was direct and positive evidence of defendant's guilt of the offense charged. Substantial evidence on which to base the verdict is all that is required. The conflict of evidence was for the jury. They settled it against defendant. That matter cannot be reopened here. State v. Rollins, 186 Mo. 505; State v. Miller, 188 Mo. 379; State v. McGee, 188 Mo. 409; State v. Smith, 190 Mo. 723. (3) Instruction 1 is drawn with all the particularity of an indictment. It is, in every essential respect, a copy of an instruction once approved by this court. State v. Ma Foo, 110 Mo. 18. In another case a similar instruction was condemned, but only because the question which it submitted in proper form, was not included in the information. State v. Kyle, 177 Mo. 662.

GANTT, P. J.—On the 8th day of July, 1907, the circuit attorney of the city of St. Louis filed in the office of the clerk of the circuit court the following information:

*State of Missouri, City of St. Louis, ss.*
    Circuit Court of City of St. Louis, June Term, 1907.
    Richard M. Johnson, assistant circuit attorney, in and for the city of St. Louis aforesaid, within and for the body of the city of St. Louis, on behalf of the State of Missouri, upon his official oath, information makes as follows:
    That Alfred Nerzinger on the ninth day of June, in the year of our Lord, one thousand nine hundred and seven, at the city of St. Louis aforesaid, with force and arms, in and upon one Lena Wunsch feloniously, wilfully, on purpose and of his malice aforethought did make an assault; and the said Albert Nerzinger with a large quantity of sulphuric acid then and there feloniously, wilfully, on purpose and of his malice aforethought did put out the eyes of the said Lena Wunsch, by then and there burning the said eyes of the said Lena Wunsch, with said sulphuric acid, with the intent then and there, her, the said Lena Wunsch feloniously, wilfully, on purpose and of his malice aforethought to maim and disfigure; against the peace and dignity of the State.
                                    RICH M. JOHNSON,
                                        Assistant Circuit Attorney.

State v. Nerzinger.

*State of Missouri, City of St. Louis, ss.*

    Richard M. Johnson, being duly sworn, upon his oath, says that the statements made in the foregoing information are true.

RICH M. JOHNSON.

Subscribed and sworn to before me this 8th day of July, 1907.

ADOLPH NAST,

(Seal.)              Clerk of the Circuit Court,
City of St. Louis
(for criminal causes).

The defendant was arrested and duly arraigned and entered his plea of not guilty. The cause was then continued to the October term, 1907, and thereat the defendant by leave of court withdrew his plea of not guilty and filed a motion to quash the information. The motion to quash the information was overruled and the defendant was rearraigned and again pleaded not guilty. At the same term the cause was tried to the jury and the defendant was found guilty and his punishment assessed at twenty years in the penitentiary. In due time he filed his motion for a new trial and in arrest of judgment, which were overruled and he has appealed to this court.

The evidence on the part of the State in substance tended to prove that on the evening of Sunday, June 9, 1907, Mrs. Lena Wunsch visited Kaiser's Garden, in the city of St. Louis. About 8:30 p. m., of that evening she left the garden with an acquaintance of hers by the name of Lautenschlager and proceeded toward Grand avenue intending there to take the Grand avenue car. Her home was at 3113 S. Ninth street in the city of St. Louis. As Mrs. Wunsch and her escort arrived at the alley running south from Osceola street between Grand avenue and Thirteenth street, the defendant, Albert C. Nerzinger, partially emerged from the alley and threw sulphuric acid upon Mrs. Wunsch, entirely destroying her eyesight, and seriously burning her face, neck and upper part of her body. The injury was so severe that the woman's eyeballs dropped from their sockets about three weeks later.

Both Lautenschlager and Mrs. Wunsch identified the defendant as the man who threw the acid. An electric light twenty-five feet away shown directly upon the defendant. Some of the acid struck Lautenschlager in the face. The strength of the acid was attested by the fact that it left brown spots where drops of it struck the board fence at the mouth of the alley where the offense was committed. After the assault as above described, defendant turned and ran back into the alley, then out of it towards Grand avenue and was lost to sight. When the acid struck them, both Mrs. Wunsch and Lautenschlager fell to the ground. She was taken into a drugstore at 3300 Meramec street and a physician was called and she was taken to the hospital; she was suffering excruciating pain during all this time. Her screams were heard over the telephone by Dr. Winter when he was called to come to the drug store to her. Dr. Winter, the physician, who first treated Mrs. Wunsch's injuries, declared them to have been burned by sulphuric acid.

Defendant was arrested on information given to Dr. Winter by Mrs. Wunsch at the drug store where she was first taken. The defendant's shoes were examined on the morning of June 10th, the day following the commission of the offense, and red spots were found on the uppers and on the strings. When asked how these spots came upon his shoes, defendant said he did not know and did not care. He admitted that he had worn these shoes the previous day.

Assistant city chemist, Otto A. Daudt, made an analysis of portions of the strings of the defendant's shoes and found the spots thereon to be due to the corrosive action of sulphuric acid. The clothing which defendant, after his arrest, claimed to have worn on that night, was examined and no marks of acid found upon them.

As tending to prove a motive for the commission of this crime by the defendant, the State offered evidence showing that he and Mrs. Wunsch had been acquainted some two or three years; that for some time prior to November 3, 1906, defendant and Mrs. Wunsch had been on quite friendly terms and seemed to have been thrown into each other's society at defendant's mother's and sister's homes, and also at Klaussman's and Kaiser's "gardens," and other places of the kind. They also frequently met upon the streets near the Wunsch residence. On November 3, 1906, they quarreled, and defendant two days later went to Memphis, Tennessee, whence he wrote several letters to Mrs. Wunsch, the contents of which do not appear by the evidence. The defendant then returned to St. Louis and wrote other letters to Mrs. Wunsch which she returned to him unopened. Defendant's infatuation for Mrs. Wunsch became so great that he would lie in wait for her on the streets near her home, and would meet her and plead with her to resume their former friendship. He would send Mrs. Wunsch word that she was wanted at the telephone in order to induce her to come out on the street so that he might meet her and talk with her. He attempted to persuade her to get a divorce and go away with him. Some two weeks before the commission of the crime, defendant came to the Wunsch home and attempted to restore himself to the favor of Mrs. Wunsch. Failing in this, he declared to her that "if he could not have her, nobody else should." She asked him if he intended to shoot her and he said: "You will find out, I will catch you anyway, you always ran away from me, but I will get you anyway. I will get you where I want you." Angered at his repulse, defendant's parting words on that day were, "Rache ist suess" (Revenge is sweet).

To rebut the inference to be drawn from this character of testimony, the counsel for the defendant developed on cross-examination that Mr. and Mrs. Wunsch had separated about three weeks prior to June 9, 1907. However, both the husband and the wife denied that there was any serious disagreement, he ascribing the separation to his wife's temper, while she gave the cause as the husband's habit of drinking and consequent mistreatment of her.

Wunsch had at one time, when Lautenschlager was rooming at the Wunsch home, ordered him from the house because of conduct between Lautenschlager and Mrs. Wunsch, which Wunsch did not approve of. What the conduct was did not appear from the evidence. Wunsch did not seem to attach much importance to the matter and both Lautenschlager and Mrs. Wunsch denied any impropriety.

The evidence tended to show that the defendant and Wunsch greatly differed in appearance. Defendant was thirty-three years old, short and dark with black hair and mustache. Wunsch was considerably older than the defendant and very slender and had white hair and white mustache. Both Lautenschlager and Mrs. Wunsch testified positively that the man who threw the acid upon Mrs. Wunsch, was the defendant, Nerzinger, and not Leo Wunsch, the husband.

The defense was an alibi. Rudolph Stinsler, who lived on the premises adjoining the alley, the entrance of which was into Osceola street which the State's evidence fixed as the scene of the crime, testified that he was attracted by a woman's screams at the place indicated on the night of June 9, 1907, and that it was about fifteen minutes after 9 p. m. The proprietor of the drugstore at 3300 Meramec avenue and the physician who attended Mrs. Wunsch, corroborated Stinsler's statement to some extent as to the time as stated by him. Defendant's counsel read in evidence the testimony of Mrs. Wunsch and Lautenschlager as given

at the preliminary hearing on July 3, 1907, wherein they had respectively fixed the time of leaving Kaiser's garden at 9 p. m., and 9.10 p. m.

The defendant's brother and sister testified to his having spent the afternoon of June 9, 1907, at his home at 2342 Dodier street in St. Louis and fixed the time of his departure therefrom at 7:15 p. m. Defendant testified that he left home that evening at 7:15 p. m. and went to Klaussman's cave or grove at 8600 South Broadway; that the trip occupied about an hour; he then spent some time going through the grove and Mannion's Park near by, in search of one Goodrich; that he found Goodrich at Klaussman's and remained there until eleven p. m., when he went home, leaving there after midnight. As to his presence at Klaussman's from 9:15 p. m., until about 11:00 p. m., defendant was corroborated by Daniel E. Naughton and William S. Goodrich and Edward Greene. Defendant denied having committed the crime charged and denied having seen Mrs. Wunsch on the evening of June 9, 1907, at all. Defendant denied having been at the Wunsch home recently before the 9th of June when the conversation, detailed by the State's witnesses wherein he threatened Mrs. Wunsch, was alleged to have occurred. He testified that he was at work on these occasions at his business as a journeyman plumber, and in this he was corroborated by his then employer. He admitted frequent meetings by appointment with the prosecutrix prior to November 3, 1906; that he quarreled on the date mentioned and that he went to Memphis on November 5th, whence he wrote her. This last was stricken out on motion.

The shoes offered by the State were admitted by the defendant to be his and he testified that he had given the suit of clothes he had worn on that night to some prisoner, whose name he did not remember. He testified that he wore the shoes mentioned at his work sometimes, and Raisel his employer, and himself a

plumber, testified that muriatic acid, and a brownish paste probably containing the acid named, were frequently used by plumbers in their work. Defendant was uncertain as to how the spots got upon his shoes. There was also evidence that defendant's reputation for peace and quiet was good, and that he was a sober and industrious workman.

Dr. Winter testified that while at the drugstore he asked both Mrs. Wunsch and Lautenschlager if they knew who had thrown the acid; and they both stated to him that they did not, because of the darkness and that the man had a slouch hat on pulled down over his face so that they could not see it. Dr. Winter further testified that either on the way to the hospital, or after arriving there, she said that she did not know who threw the acid, but told him to "arrest Albert Nerzinger; he is the man who would have done it because he swore he would be revenged, he swore he would be eternally revenged. He has money, he has $4,000, he can pay for it." That thereupon he telephoned to the police, in accordance with the request of Mrs. Wunsch, and gave them the name and address of the defendant as furnished to him by her.

Mr. Reilly, the aforesaid druggist, testified that after Mrs. Wunsch and Lautenschlager came to his drugstore, Lautenschlager asked her in German if she knew who threw the acid, and that she answered in German that he was a man of dark complexion or dark hair. Mr. Reilly, though with an Irish cognomen, is a native-born German and understands the language. Mrs. Wunsch denied making these statements to Dr. Winter.

I. The indictment was drawn to charge the offense of mayhem under section 1846, Revised Statutes 1899, which provides that: "Every person who shall, on purpose and of malice aforethought, . . . . . put out an eye, . . . . of any person, with intent

to kill, maim or disfigure such person, shall be adjudged guilty of mayhem, and, on conviction, be imprisoned in the penitentiary for a term not exceeding twenty-five years.''

It is objected that this indictment is faulty in that it does not allege that the thing done to accomplish the result was done feloniously. The indictment itself answers this contention.

Neither is the indictment bad because it does not give a description of the character of sulphuric acid, or state how it was used, whether by throwing it in her face or throwing her into the acid. The manner of applying the sulphuric acid to her eyes was entirely immaterial so long as by this means he put out her eyes feloniously and with malice aforethought. We think the indictment fully advised the defendant of the charge he was to meet.

The industry of counsel has not furnished us with any decision of any court of last resort, or any reputable text-writer which sustains this contention that this indictment was and is not sufficient. This is a statutory offense and the indictment uses all the essential words of the statute with sufficient other allegations to individuate the offense. [U. S. v. Scroggins, 27 Fed. Cases 1000; Neblett v. State, 47 Tex. Crim. 573.]

II. Error is assigned upon the refusal of the circuit court to give an instruction requested by the defendant as to circumstantial evidence. The necessity for instructing the jury upon circumstantial evidence has often been considered by this court. In the very recent case of State v. Crone, 209 Mo. l. c. 330, 331, it was ruled that it is only when the State relies upon circumstantial evidence *alone* that an instruction on such evidence should be given. But the learned counsel insists that that case and State v. Donnelly, 130 Mo. 642, and State v. Robinson, 117 Mo. 649, are not in harmony with what was said in State v. Woolard,

111 Mo. l. c. 256. But a reference to that case will show that the refused instruction recognized the ruling in State v. Crone as correct; it says: ''The court instructs the jury that in order to convict the defendant upon circumstantial evidence, *alone,* the circumstances tending to show his guilt should be established beyond a rational doubt,'' etc. An examination of the testimony of the witness Brown in that case will show that he himself had been indicted for the killing of Yarbrough, and he testified that the prosecuting attorney said to him that if he would swear against Woolard, he would release him and turn him out of jail. He admitted that he had charged at least two other persons with having committed the offense, and had repeatedly said that Woolard did not do it. Besides that, the general reputation of the witness Brown was shown to have been very bad. In this case there was no attempt to assail the general reputation of Mrs. Wunsch or Lautenschlager, but it is insisted that her evidence was impeached by Dr. Winter and the druggist, who testified that Mrs. Wunsch and Lautenschlager both stated that they did not know who threw the acid into her eyes. It does appear, however, that Doctor Winter, on the way to the hospital, or after leaving there, was told by her to arrest Nerzinger, and it was upon her information that the defendant was arrested, so that this case is in all of its essential facts like that of State v. Crone, in which this court held that the witness in that case had not been impeached within the meaning of that term as used in Woolard's case. In our opinion to have given an instruction in the form prayed by the defendant, or in the usually approved form of instruction on circumstantial evidence, would have been misleading, and there was no prejudice to the defendant in refusing the same for the reason that the court fully instructed the jury on reasonable doubt.

The case of State v. Woolard was properly interpreted in State v. Donnelly, 130 Mo. 642.

III. The twelfth instruction given by the court is assailed as erroneous. It is in these words: "A reasonable doubt is a doubt based on reason, and which is reasonable in view of all the evidence. And, if, after an impartial comparison and consideration of all the evidence you can candidly say that you are not satisfied of the defendant's guilt, you have a reasonable doubt; but if after such impartial consideration of all the evidence you can truthfully say that you have an abiding conviction of the defendant's guilt—such a conviction as you would be willing to act upon in the more weighty and important matters relating to your own affairs—then you have no reasonable doubt."

Previous to that, in instruction number seven, the court instructed the jury, "If, upon consideration of all the evidence, you have a reasonable doubt of the defendant's guilt, you should acquit; but a doubt to authorize an acquittal on that ground, ought to be a substantial doubt touching the defendant's guilt, and not a mere possibility of his innocence." It has often been remarked by this court that this last instruction embodied the true doctrine as to reasonable doubt in criminal causes. As said in State v. Leeper, 78 Mo. 470, its use in this form is almost canonized, and this court has often admonished the circuit courts that it is better to adhere to instructions that have received the approval of this court and not to attempt definitions which add nothing to the meaning of well understood terms. So in this case, we think it was entirely unnecessary to give the twelfth instruction of which the defendant complains. But the question is, after all, whether this instruction was prejudicial to the defendant.

The Supreme Court of California in People v. Cadd, 60 Cal. 640, approved the following instruction: "A reasonable doubt is that state of the case which, after the entire comparisons and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot say that they feel an abiding conviction to a moral certainty of the truth of the charge; that is, to a certainty that convinces and directs the understanding and satisfies the reason and judgment of those who are bound to act conscientiously upon it."

The Supreme Court of Indiana in Toops v. State, 92 Ind. l. c. 16, held that it was not error to instruct the jury that "evidence is sufficient to remove a reasonable doubt, when it is sufficient to convince the judgment of ordinarily prudent men of the truth of a proposition with such force that they would act upon that conviction, without hesitation, in their most important affairs."

In People v. Hughes, 137 N. Y. l. c. 40, the Court of Appeals said: "Complaint is made of the charge as it respects the question of what constitutes a reasonable doubt. Substantially the court charged that it could not be said to exist where the jury are so firmly convinced of the facts necessary to establish the prisoner's guilt that if it was a very grave and serious matter affecting their own affairs they would not hesitate to act upon such conviction. A similar charge was approved in People v. Wayman, 128 N. Y. 585, and Miles v. U. S., 103 U. S. 304, to which the respondent calls our attention."

In Giles v. State, 6 Ga. l. c. 285, C. J. Lumpkin said, in discussing an instruction on reasonable doubt: "Moral certainty is all that can be required. The proof should be such as to control and decide the conduct of men in the highest and most important affairs of life, and not a mere vague conjecture, a fancy, a trivial supposition, a bare possibility of innocence.

. . . It is enough that the evidence, whatever be its character, whether positive or presumptive, direct or circumstantial, satisfies the understanding and conscience of the jury.''

In Lawhead v. State, 46 Neb. l. c. 609, the Supreme Court approved the following instruction: ''The court instructs you that by a reasonable doubt is not meant that the accused may possibly be innocent of the crime charged against him, but it means an actual doubt having some reason for its basis. A reasonable doubt that entitles to an acquittal is a doubt of guilt reasonably arising from all the evidence in the case. The proof is deemed to be beyond a reasonable doubt when the evidence is sufficient to impress the judgment and understanding of ordinarily prudent men with a conviction on which they would act in their own most important concerns and affairs of life.''

In Miles v. U. S., 103 U. S. l. c. 312, the court said: ''Attempts to explain the term 'reasonable doubt,' do not usually result in making it any clearer to the minds of the jury. The language used in this case, however, was certainly very favorable to the accused, and is sustained by respectable authority.'' The instruction in that case was in these words: ''The prisoner's guilt must be established beyond reasonable doubt. Proof beyond a reasonable doubt is such as will produce an abiding conviction in the mind to a moral certainty that the fact exists that is claimed to exist so that you feel certain that it exists. A balance of proof is not sufficient. A juror in a criminal case ought not to condemn unless the evidence excludes from his mind all reasonable doubt; unless he be so convinced by the evidence, no matter what the class of the evidence, of the defendant's guilt, that a prudent man would feel safe to act upon that conviction in matters of the highest concern and importance to his own dearest personal interest.''

In the light of all this judicial interpretation, we think that the 12th instruction cannot be said to have been prejudicial to the defendant, but as already said, we think it was entirely unnecessary to give it after having given the seventh instruction. In addition to this instruction on reasonable doubt, the court also gave one upon the presumption of innocence of the defendant. Indeed, taking it all together, we think the instructions were as favorable as the defendant could have asked.

IV. The first instruction is also challenged for the reason that the jury were not required to find that the acid was of a character reasonably calculated to produce that result and that the defendant knew its character. This instruction required the jury to find that the defendant, beyond a reasonable doubt, feloniously, on purpose, and of his malice aforethought, made an assault upon Mrs. Wunsch, with the intent then and there to maim and disfigure her, and in pursuance of such intent, did then and there wrongfully, willfully and with malice aforethought cast and throw into the eyes of said Lena Wunsch a quantity of sulphuric acid and that by reason of the throwing of such acid the eyes of the said Lena Wunsch were destroyed or burned out by the said acid, and that if they found these facts then they would find him guilty. We think this instruction was entirely correct without the qualifications suggested by counsel.

And the second instruction told the jury that if they found from the evidence that the defendant knowingly and willfully threw sulphuric acid, a corrosive substance, into the face of the prosecuting witness without just cause or provocation, then unless the facts and circumstances in the case satisfy them to the contrary, the law would presume and they might so find that such assault was made with malice aforethought, and with intent to destroy the eyes of said prosecut-

ing witness. The law presumes that a person intends the natural and proper consequence of his own act. The contention that the court invaded the province of the jury in telling the jury that sulphuric acid was a corrosive substance, we think is without merit. On the contrary, it was left to the jury to find that it was a corrosive substance. But had it so told the jury, it would have committed no error, as courts, as well as juries, take cognizance of such matters as are of common knowledge and pertain to the affairs and experience of almost every man's daily life. Courts do not require proof that fire will burn, or powder explode, or gas illuminate, or that many other processes in nature and art produce certain known effects, and nothing is more definitely settled in common experience than that sulphuric acid is corrosive. [State v. Hayes, 78 Mo. l. c. 318, and cases cited.]

We have carefully gone through all the exceptions in this case and we are unable to find any error prejudicial to the defendant's rights. He was accorded a fair and impartial trial, and the evidence, if believed by the jury, as it evidently was, was sufficient to convict him of this most heinous offense.

The judgment of the circuit court should be and is affirmed.

*Burgess* and *Fox, JJ.,* concur.