**STATE of Missouri, Respondent,**

**v.**

**John Hillary DURHAM, Appellant.**

**No. 51653.**

Supreme Court of Missouri,
Division No. 2.

July 10, 1967.

Motion for Rehearing or for Transfer to
Court en Banc Denied Sept. 11, 1967.

Norman H. Anderson, Atty. Gen., Jefferson City, Timothy D. O'Leary, Sp. Asst. Atty. Gen., Kansas City, for respondent.

Joseph Langworthy, Pacific, for appellant.

DONNELLY, Judge.

Appellant, John Hillary Durham, was convicted of statutory rape under § 559.260, RSMo 1959, V.A.M.S., by a jury in the Circuit Court of the City of St. Louis, Missouri, and his punishment under the provisions of the Habitual Criminal Act, § 556.-280, RSMo 1959, V.A.M.S., was assessed at imprisonment for a term of thirty-five years. Following rendition of judgment and imposition of sentence an appeal was perfected to this Court.

■ Appellant does not question the sufficiency of the evidence. However, a brief summary is in order. Prosecutrix is Flora Jean Young, a female child, who was eleven years of age when the incident in question occurred. Appellant is her stepfather, husband of her mother, Vera Durham.

Prosecutrix was living with her grandparents (Vera Durham's parents) at 936 Laurel in the City of St. Louis. Her home was about one block from the home of appellant and Vera Durham. At noon on December 24, 1963, she went to their home to take care of their children. About 8:00 p.m. that evening appellant left the home and returned about 10:45 p.m. smelling as if he had been drinking. Prosecutrix asked appellant to take her home so she could go to church. Prosecutrix testified that after she and appellant got to the bottom of the stairs outside the house, appellant put a knife to her neck, threatened her, took her to the basement, raped her and committed an act of sodomy. She then ran home, reported the incident to her grandmother, and was taken to Homer G. Phillips Hospital where she was examined by a doctor. There is ample medical evidence in the record to corroborate the attack. Appellant and his wife, Vera Durham, testified in his behalf. Appellant denied he raped prosecutrix. The evidence is sufficient to sustain the conviction.

■ By stipulation, seven prior convictions of appellant were admitted into evidence. Appellant was granted a pardon for these offenses by the Governor of Missouri on October 8, 1963. Appellant contends that he was erroneously tried and sentenced under the Habitual Criminal Act, § 556.280, RSMo 1959, V.A.M.S. He asserts that he was thereby deprived of his right to trial by jury. This contention has been raised many times in this Court and is without merit. State v. Wolfe, Mo.Sup., 343 S. W.2d 10, 12, 13; State v. Maxwell, Mo. Sup., 411 S.W.2d 237, 239, 240. He also asserts that because, after conviction of his prior offenses, he was *pardoned* by the Governor of Missouri, he is no longer subject to trial and punishment under the Habitual Criminal Act. He contends that his trial and punishment under the Habitual Criminal Act is in violation of Art. II, § 1, and Art. IV, § 7, Const. of Mo.1945, V. A.M.S.

Art. II, § 1, Const. of Mo.1945, divides the powers of government "into three distinct departments—the legislative, [the] executive and judicial—* * *." Art. IV, § 7, Const. of Mo.1945, gives the Governor power to grant "pardons, after convictions, for all offenses except treason and cases of impeachment, upon such conditions and with such restrictions and limitations as he may deem proper, * * *."

■ Appellant characterizes application of the Habitual Criminal Act to him in this case a "legislative and judicial encroachment upon the executive prerogative by diminishing the effect of the pardon." We do not agree. The Habitual Criminal Act does not affect the punishment the law inflicts for the prior crimes committed. It assesses additional punishment for the subsequent commission of a crime. It seeks to deter subsequent crimes by the same offender. The Governor may relieve a defendant from punishment assessed for the commission of a crime. However, the Governor's power to pardon for this offense is not involved or encroached upon by the assessment of increased punishment resulting from the commission of a subsequent offense. State ex rel. Stewart v. Blair, 356 Mo. 790, 203 S.W.2d 716; State v. Asher, Mo.Sup., 246 S.W. 911. Appellant's contention is without merit.

■ Appellant next questions rulings of the trial court in connection with admissibility of evidence and cross-examination of witnesses. He first complains the trial court erred in permitting witnesses Dr. Morris Moore, Ruth McKnight, Paul London, Gerald Wheatley, and Ernest Troop to testify for the State because their names were endorsed on the indictment by leave of court before, not after, notice to appellant. See S.Ct. Rule 24.17, V.A.M.R.; § 545.070, RSMo 1959, V.A.M.S. The names of Dr. Morris Moore, Ruth McKnight, Gerald Wheatley and Ernest Troop were endorsed on the indictment on May 12, 1964. Trial commenced on May 15, 1964, and a mistrial was declared. The name of Paul London was endorsed on the indictment on May 26, 1964. The trial commenced again on June 16, 1964, and a mistrial was declared. Trial commenced again on November 17, 1964, and a mistrial was declared. Finally, the trial from which this appeal was taken commenced on January 4, 1965, and a verdict was returned on January 8, 1965. Appellant was given adequate notice of the persons the State proposed to call as witnesses against him. This contention is without merit.

■ Appellant complains of testimony elicited from the prosecutrix concerning an inspection of her body evidencing the commission of acts of sodomy by appellant at the time of the alleged rape. We need not decide whether this evidence, relating to another crime, comes within the res gestae exception. See State v. Taylor, 320 Mo. 417, 8 S.W.2d 29. The trial court denied a request for mistrial but ordered the evidence stricken and instructed the jury to disregard it. Appellant also alleges the trial court erroneously permitted the jury to view an evidence bag on which the words "and sodomy" were written. It was the considered opinion of the trial court "that the jurors would not have been able to read the writing on the bag." We find no error prejudicial to appellant in this regard.

■ Appellant contends the trial court erred in refusing to declare a mistrial in connection with certain testimony elicited from Dr. Mitchell, who examined the prosecutrix at the hospital. That portion of the testimony complained of, to which objection was made, is as follows: "Q Would you tell me, in your own words, what the results of the examination were, and how you conducted it? A This was an eleven-year-old girl that was brought to the hospital with history of rape. MR. LANGWORTHY: I am going to object to that, and ask for a mistrial. THE COURT: Overruled. Ordered stricken; jury instructed to disregard it. Overruled on the mistrial. THE WITNESS: This

was history given to myself. MR. LANGWORTHY: I object to that, and ask for a mistrial. The witness volunteered that without instruction from anybody. THE COURT: Voluntary statement ordered stricken. Jury instructed to disregard it. Overruled as to mistrial." The trial court instructed the jury to disregard the evidence and ordered it stricken. The trial court did not abuse its discretion in refusing to declare a mistrial. State v. Walker, Mo.Sup., 46 S.W.2d 569.

█ Appellant contends the trial court erred in refusing to allow appellant to show, on cross-examination of prosecutrix, that appellant denied at the police station that he raped her. This evidence was self-serving and incompetent unless part of the res gestae. State v. Wright, 352 Mo. 66, 74, 175 S.W.2d 866, 871. In State v. Stallings, 334 Mo. 1, 64 S.W.2d 643, cited by appellant, it is pointed out that appellant's statement, in order to be considered part of the res gestae, must be "the apparently spontaneous result of the occurrence operating upon the perceptive senses of the speaker," and that "the ultimate test is spontaneity and logical relation to the main event." The element of spontaneity is absent here. There is nothing in the record to indicate that appellant was in such confused mental state as to be unable to think clearly when he allegedly made the statement at the police station nearly two hours after the commission of the crime. Appellant had time to deliberate. The statement in question was not part of the res gestae and the trial court did not err in excluding it. State v. Crouch, 339 Mo. 847, 855, 98 S.W.2d 550, 555; 22A C.J.S. Criminal Law § 737.

█ Appellant contends the trial court erred in admitting evidence and permitting cross-examination relating to attempts of Vera Durham, wife of appellant, to commit suicide.

On cross-examination by appellant's counsel, Flora Jean Young testified as fol-

lows: "Q I hand you what has been marked Defendant's Exhibit A. Is that note from you to your mother? A Yes. Q Did you write that to her? A Yes. Q Would you like to read it? Can you read it? A (Reading) Dear Sweetie Pie: I am sorry about the terrible things that I said John did to me Christmas Eve. They were not true. I didn't like the way he had been treating me. Love Flora Jean Young." She later testified on cross-examination that her mother, Vera Durham, told her to write the note "and if I didn't write it down she would kill herself."

On redirect examination the following testimony was elicited from Flora Jean Young: "Q Do you have any knowledge of the attempts of Vera Durham, your mother, to take her life at any time? MR. LANGWORTHY: I object to that. Beyond the issues in this case. THE COURT: Overruled. MR. LANGWORTHY: I object to it as being leading. THE COURT: Overruled. A Yes. Q And was she admitted to a hospital for that? MR. LANGWORTHY: I object to that for the same reason. THE COURT: She may answer. A When? Q Well, at any time prior to this particular case, that was in your knowledge? A Was she in the hospital? Q Yes. Did she go down to the hospital? or do you know? A I don't know. Q You did say that she stated that she would commit suicide if you didn't write that note; is that correct? A Yes."

█ Appellant attacks this testimony as an attempt to impeach the testimony of Vera Durham on a collateral matter and before she had been called as a witness. We do not so construe it. On cross-examination, appellant introduced the note written by Flora Jean Young, wherein she absolved appellant of guilt. She later testified she wrote the note because her mother, Vera Durham, threatened to commit suicide. On redirect examination she was properly permitted to give her reasons for writing the note in order to refute the unfavorable inferences brought out on cross-

examination. State v. Vickers, 209 Mo. 12, 106 S.W. 999; City of St. Louis v. Worthington, 331 Mo. 182, 52 S.W.2d 1003, 1009. In the course of a trial, the "order in which testimony is admitted is a matter largely resting in the discretion of a trial court." State v. Vickers, supra, 209 Mo. 12, 31, 106 S.W. 999, 1004.

Emma Carter, grandmother of Flora Jean Young, and mother of Vera Durham, was asked whether, during the eight years Vera Durham lived with her, she was aware of an occasion when Vera Durham attempted to take her life. Objection was made and the question was never answered.

Vera Durham was cross-examined as follows: "Q. Now, isn't it a fact, madam, that you took some Lysol in an attempt to commit suicide? * * * A. The answer to that is no, I have never taken anything in my life to take—make suicide, you can believe that. * * * Q. Had you been a patient in the psychiatric ward in connection with any suicide attempt, have you never been a patient in the psychiatric ward at Homer G. Phillips Hospital?

* * * A. My Mother took me to the hospital at that particular time, but just what they took me there for, I didn't exactly know, other than I was talking to my first husband over the phone and some of them were eavesdropping or something and out of the conversation they got—after the conversation was over with, they started— my Daddy said what happened and all and my grandfather and my Mother took me over to the hospital and they asked me and the doctor said, 'Did you take anything?' and gracious no, I didn't take anything. They pumped my stomach. You look for the record, there was nothing in me. I had not taken anything. And they kept me there overnight. Everybody was so sorry, just like they told me about their— * * * Q Have you attended Doctor Weekes as a patient for psychiatric help? [No answer given.] Q. During what time of

years did you go to Doctor C. V. Weeks, how long have you know the man? A. Well, he delivered Flora Jean, and that is how I was introduced to Doctor Weekes, through Doctor Young. Q. And that has been then, over at least a twelve year period, is that correct? A. Yes. Q. You have known him for twelve years? A. Yes. Q. Have you gone to him for medical problems over that twelve year period? A. Sure. Q. During this time that you went to him, did he consult with you about any suicidal or psychological problems you may have had? A. No. Q. Did he suggest that you see also and consult with another doctor? A. No. Q. He has never said that at all? A. No, sir. Q. You have never consulted with him about that? A. No. Q. You have never consulted with him about anything to do with taking your life at any time? A. No."

Appellant cites State v. Kain, Mo.Sup., 330 S.W.2d 842 and State v. Williams, 337 Mo. 884, 87 S.W.2d 175, 100 A.L.R. 1503, for the proposition that it is error to impeach the credibility of a witness in a criminal case by showing that her general reputation for morality is bad. These cases are not in point. The State was entitled to show that Flora Jean Young was justifiably intimidated by her mother when she wrote the note. If the child knew her mother had previously attempted suicide, she was more easily intimidated by the threat. We hold the evidence of previous attempts to commit suicide was properly admitted. The cross-examination of Vera Durham was directed to this issue and was proper. Its scope and extent were within the discretion of the trial court. State v. Barnes, 325 Mo. 545, 29 S.W.2d 156; State v. Flinn, Mo. Sup., 96 S.W.2d 506.

Appellant asserts the trial court erred in admitting into evidence a hospital record card, Exhibit No. 4, in that it contained matter that was inadmissible hearsay, was

not fully identified, and violated his right under Art. I, § 18(a), Const. of Mo., 1945, "to meet the witnesses against him face to face."

Appellant's objection that the hospital record card was inadmissible hearsay is of no substance if it was properly qualified under The Uniform Business Records as Evidence Law. §§ 490.660–490.690, RSMo 1959, V.A.M.S. In Rossomanno v. Laclede Cab Co., Mo.Sup., 328 S.W.2d 677, at 681, this Court said: "The Business Records as Evidence Law abrogated many of the antiquated and technical common law rules regarding the admission of business records in evidence and expanded the operation of the common law rule for the admission of such records as an exception to the hearsay rule. Melton v. St. Louis Public Service Co., 363 Mo. 474, 251 S.W.2d 663, 669[11, 13]. Therefore, an objection to a business record on the ground that it is hearsay is unavailing if the record meets the requirements of the act for admission in evidence. Allen v. St. Louis Public Service Co., 365 Mo. 677, 285 S.W.2d 663, 667[7], 55 A.L.R.2d 1022."

Hospital records come within the purview of § 490.680, RSMo 1959, V.A.M.S. In order for a record to qualify, there "must, of course, be a preliminary showing of the identity of the record, the mode and time (or times) of its preparation, and that it was made in the regular course of business; if this, and the 'sources of information,' are sufficient 'in the opinion of the court,' then the record, generally, is admissible." Allen v. St. Louis Public Service Company, 365 Mo. 677, 285 S.W.2d 663, 666, 55 A.L.R.2d 1022. "The trial court must of necessity be given a large discretion in his determination of whether the statutory requirements for admission of the business records have been satisfactorily complied with." Rossomanno v. Laclede Cab Co., supra, 328 S.W.2d 677, 683.

Mary Wilkins, Custodian of the Medical Records at Homer G. Phillips Hospital, identified Exhibit No. 4 as the hospital outpatient card, dated December 25, 1963. Dr. Morris Moore, a microbiologist employed at Homer G. Phillips Hospital, identified the card as a report of some examinations which were made at the hospital. He testified that it bears his handwriting on the front and back, the subject of the card is Flora Jean Young, that he saw it in the hospital, and that he filled out a portion of it as a result of his examinations. We hold this qualification sufficient. The card is competent evidence.

The next question is whether admission of the whole exhibit into evidence violates appellant's right under Art. I, § 18(a), Const. of Mo., 1945, "to meet the witnesses against him face to face." We hold that it does not. In State v. McO'Blenis, 24 Mo. 402, at 416, the Court considered this constitutional right, and said: "The purpose of the people was not, we think, to introduce any new principle into the law of criminal procedure, but to secure those that already existed as part of the law of the land from future change by elevating them into constitutional law. It may as well be the boast of an Englishman living under the common law, as of a citizen of this state living under our constitution, that in a criminal prosecution he has a right to meet the witnesses against him face to face; and yet it was never supposed in England, at any time, that this privilege was violated by the admission of a dying declaration, or of the deposition of a deceased witness, under proper circumstances; nor, indeed, by the reception of any other hearsay evidence established and recognized by law as an exception to the general rule."

In Missouri, hospital records, if qualified under § 490.680, supra, constitute an exception to the general hearsay rule. Allen v. St. Louis Public Service Company,

supra. Therefore, as a general rule, the admission into evidence of a properly qualified hospital record in a criminal case does not violate Art. I, § 18(a), Const. of Mo., 1945.

Appellant cites State v. Gorden, 356 Mo. 1010, 1014, 204 S.W.2d 713, 715, where this Court said: "The Bill of Rights of our Constitution, Art. 1, § 18, Mo.Const.1945, Laws 1945, p. 5, Mo. R.S.A., provides: 'That in criminal prosecutions the accused shall have the right * * * to meet the witnesses against him face to face * * *.' This provision assures to one accused of crime the rights of confrontation and of cross-examination under oath and excludes extrajudicial statement of witnesses as probative evidence of a defendant's guilt in the circumstances of the instant case."

■ Appellant made only a "blanket objection" to Exhibit No. 4 in the trial court and did not specify those portions of the card considered objectionable. The objection made was properly overruled. Allen v. St. Louis Public Service Company, supra, 285 S.W.2d 663, 667[8–12]. Further, we have examined Exhibit No. 4. We find the words "Alleged Rape" twice written on its face. However, we find recorded on the card no statements made by Flora Jean Young to hospital personnel which would constitute substantive probative evidence that *appellant* had raped her. State v. Gorden, supra, is not in point. The trial court did not err in admitting Exhibit No. 4 into evidence.

■ Appellant next alleges the trial court erroneously instructed the jury. He first asserts that the trial court erred in instructing the jury that "feloniously" means "wickedly and against the admonition of the law." It is true, as appellant contends, that it was not necessary to define "feloniously" in the instruction. The word is used to classify offenses. A felony is an offense punishable by death or by imprisonment in the penitentiary. Section 556.020, RSMo 1959, V.A.M.S. If the facts establish a felony, then the crime was committed "feloniously." However, in our opinion, the definition could not have prejudiced appellant's case. State v. Turner, Mo.Sup., 272 S.W.2d 266, 271, 48 A.L.R.2d 1008; State v. Jones, Mo.Sup., 365 S.W.2d 508, 514.

Appellant contends Instruction No. 3 given by the trial court was erroneous and that the trial court erred in refusing his instructions defining "reasonable doubt" and "substantial doubt." The portion of Instruction No. 3 complained of reads as follows:

■ "If, upon consideration of all the evidence, you have a reasonable doubt of the defendant's guilt, you should acquit, but a doubt to authorize an acquittal on that ground ought to be a substantial doubt touching the defendant's guilt and not a mere possibility of defendant's innocence."

Identical language was considered in State v. Davis, Mo.Sup., 365 S.W.2d 577, 580, where this Court said: "The defendant contends that the instruction is erroneous because it creates an inference that something more than a reasonable doubt is necessary for an acquittal and fails to define the term 'substantial doubt'. It is clear from the context that 'substantial' is used in the sense of 'Not seeming or imaginary; not illusive; real; true'. Webster's New International Dictionary, Second Edition. The use of the word without further definition did not render the instruction erroneous. State v. Burnett, 365 Mo. 1060, 293 S.W.2d 335, 343[14]. Any attempt to make the meaning of the term plainer would probably have the opposite effect.

"Furthermore the instruction does not create an inference that something more than reasonable doubt is necessary for acquittal and it does not take away de-

fendant's right to have his guilt proved beyond a reasonable doubt. State v. Sanders, Mo., 358 S.W.2d 45, 48[4]; State v. Velanti, Mo., 331 S.W.2d 542, 545[4]; State v. Hutsel, 357 Mo. 386, 208 S.W.2d 227, 232[12]."

Nearly identical language was considered in State v. Nerzinger, 220 Mo. 36, 49, 119 S.W. 379, 383, where this Court said: "It has often been remarked by this court that this last instruction embodied the true doctrine as to reasonable doubt in criminal causes. As said in State v. Leeper, 78 Mo. 470, its use in this form is almost canonized, and this court has often admonished the circuit courts that it is better to adhere to instructions that have received the approval of this court and not to attempt definitions which add nothing to the meaning of well-understood terms."

■ Appellant contends the trial court erred in giving Instruction No. 4 and in refusing to give Instruction G. Instruction No. 4 is identical with Instruction No. 8 given and approved in State v. Knicker, Mo.Sup., 366 S.W.2d 400, 404[8]. Instruction No. 4 properly and sufficiently instructed the jury on "alibi."

We find no error in the instructions. Appellant's contentions in this regard are without merit.

Appellant finally complains of comments made by counsel for the State during the trial and in closing argument. We have reviewed the record in this regard and find no abuse of the trial court's discretion in ruling the matters presented. State v. Eison, Mo.Sup., 271 S.W.2d 571; State v. Tiedt, 360 Mo. 594, 229 S.W.2d 582; State v. Robertson, Mo.Sup., 328 S.W.2d 576.

An examination of the record as required by S.Ct.Rule 28.02, V.A.M.R., discloses no error.

The judgment is affirmed.

All of the Judges concur.