In the Matter of Talbert W. Hughes v. State Board of Health, E. Sanborn Smith, William M. West, John Aull, Charles H. Neilson, George W. Gay, L. Paul Forgrave and Harry Parker, Appellants.—159 S. W. (2d) 277.

Division One, February 26, 1942.

*Roy McKittrick,* Attorney General, *Russell C. Stone* and *William C. Connett, IV,* Assistant Attorneys General, for appellant.

1238

*Frank Coffman* for respondents.

█ DOUGLAS, J.—The State Board of Health entertained this proceeding against Dr. Talbert W. Hughes, respondent, to revoke his license to practice medicine. The statutory hearing before the board was held. The board found respondent to be a person of bad moral character and guilty of unprofessional and dishonorable conduct and revoked his license. On certiorari, the Circuit Court of the City of St. Louis quashed the record of the board and ordered the board to restore respondent's license. From that judgment the board appeals to this court.

There were several charges filed against respondent. One of these was: "That the said Talbert W. Hughes, on March 5, 1915, was convicted in the District Court of the United States for the Southern District of Texas for the crime of using the United States mails in the furtherance of a scheme to defraud and conspiracy in violation of Section 215 of the Federal Code (18 U. S. C. A., para. 338)."

█ The Missouri Statute does not expressly specify conviction of a crime as a ground of revocation of a physician's license. Our statute (Sec. 9990, R. S. 1939) authorizes the State Board of Health to "refuse to license individuals of bad moral character, or persons guilty of unprofessional or dishonorable conduct" and to revoke licenses "for like causes." Certain acts, habitual drunkenness for example, are specified as being unprofessional and dishonorable conduct. We have held such specific enumeration does not thereby exclude other acts indicative of unprofessional or dishonorable conduct not mentioned in the statute. Any conduct, although not specified, which by common opinion and fair judgment is determined to be unprofessional or dishonorable may constitute grounds of revocation. State ex rel. Lentine v. State Board of Health, 334 Mo. 220, 65 S. W. (2d) 943.

█ The argument that the ground of revocation must be expressly specified by statute is based on our decision in State ex rel. Spriggs v. Robinson, 253 Mo. 271, 161 S. W. 1169. There we held that this statute was a penal law and therefore should be construed liberally in favor of the physician and strictly against the State. We followed this holding without comment in State ex rel. Johnson v. Clark, 288 Mo. 659, 232 S. W. 1031. Then in State ex rel. Horton v. Clark, 320 Mo. 1190, 9 S. W. (2d) 635, we said: "We have held this statute penal and ruled that the acts for the commission of which the valuable privilege or right to █ practice medicine and surgery may be taken away must come within both the letter and spirit of the law. State ex rel. Spriggs v. Robinson, 253 Mo. 271, l. c. 285, 161 S. W. 1169. Nevertheless it is a wholesome and well-recognized

rule of law that powers conferred upon boards of health to enable them effectually to perform their important functions in safe-guarding the public health, should receive a liberal construction. 29 C. J. sec. 30, page 248, also sec. 6, page 243.''

The effect of this statement was to overrule the Spriggs case and to hold that the statute was not essentially a penal one for the punishment of physicians, at least so far as the ground of revocation is concerned, but was one for the protection of the public in safe-guarding public health. There was no express statement in the opinion that the Spriggs case was overruled, yet such was the fact. Both decisions could not logically stand. Long before the Spriggs case decision we had held that the medical practice act was enacted in the interest of society. State v. Hathaway, 115 Mo. 36, 21 S. W. 1081. Such is the general rule. The United States Supreme Court construing the New York Statute said: ''The State is not seeking to further punish a criminal, but only to protect its citizens from physicians of bad character.'' Hawker v. New York, 170 U. S. 189. However, any doubt has been dispelled by the decision in the Lentine case, supra, which observed the amendment to the statute indicating a legislative intention contrary to the Spriggs case and expressly stated that the Spriggs case should no longer be followed. [Compare Rust v. Missouri Dental Board, 348 Mo. 616, 155 S. W. (2d) 80.]

██ ██ Consequently the conviction of a crime may properly be considered as a ground of revocation. If found to be evidence of bad moral character, unprofessional or dishonorable conduct it may warrant revocation of a physician's license, especially where the crime involves moral turpitude. A conviction is an adjudication of the fact that the person charged has violated the law. ''What more conclusive evidence of the fact of such violation can there be than a conviction duly had in one of the courts of the State?'' rhetorically asks the United States Supreme Court in Hawker v. New York, supra.

We hold the charge that Dr. Hughes was a person of bad moral character because of his conviction of the crime of using the mails to defraud to be sufficient and proper under the statute.

██ The facts upon which a conviction was based were held sufficient to show such gross immorality as to require revocation in Seitz v. Ohio State Medical Board, 24 Ohio App. 154, 157 N. E. 304. This was so even though the conviction itself was not of such a felony under the particular statutory provision as would warrant revocation of the physician's license. The Florida Supreme Court held a physician who was convicted of a felony was a person of such bad character as to make him unfit to practice. Page v. Watson, 140 Fla. 536, 192 So. 205. The Missouri statute of revocation is broader than the statutes of those states which authorize revocation for the conviction of a crime. Under our statute revocation may be had upon proof of bad moral character notwithstanding the acts showing such bad char-

acter constitute no crime. Guilt of unprofessional or dishonorable conduct is likewise sufficient. Or, if the acts committed by a physician amount to a crime, his license may be revoked though no conviction is had if such acts show bad character, unprofessional or dishonorable conduct. Therefore, it must follow that the conviction of a felony involving moral turpitude constitutes sufficient evidence of bad moral character.

 The fact that respondent received a presidential pardon, full and unconditional, in no way affects the situation before us. It cannot be construed as restoring good character. Generally speaking, a pardon "is an act of grace . . . which exempts the individual on whom it is bestowed from the punishment the law inflicts for a crime he has committed." Ex parte Lime v. Blagg, 345 Mo. 1, 131 S. W. (2d) 583, quoting from 46 C. J. "Pardons" sec. 1. Whether an unconditional pardon had the effect of restoring to one convicted of a crime a license to practice the art of healing revoked because of such conviction was considered in State v. Hazzard, 139 Wash. 487, 247 Pac. 957, 47 A. L. R. 538. In a well-reasoned opinion the court concludes that a pardon merely restores civil rights and not the right to resume the practice of the art of healing. "Our investigation has disclosed no decision by a court of last resort, other than Ex parte Garland, 4 Wall. 333 (previously distinguished) holding that it further restores the extraordinary right to practice any of those professions which, because of their peculiar relation to the public, require that those holding licenses must have the important qualification of good character." The annotation in 47 A. L. R. 542 points out that this decision is in accord with the rule applicable to office-holders (including lawyers in that category) which holds the forfeited office is not restored by reason of the pardon. Page v. Watson, supra, dealt with the same question and reached the same conclusion.

Clearly the conviction of respondent of the crime of using the mails to defraud constituted evidence of bad moral character sufficient to sustain the action of the board in revoking his license. Respondent did not contend otherwise, but relied on the pardon to overcome the effect of the conviction. This he may not do.

 An additional charge against respondent was as follows: "That said Talbert W. Hughes has caused, permitted and instructed one William H. Steinmeyer, employed by him as bookkeeper, to practice the profession of medicine in this state, without a license, for the past eight years; the said William H. Steinmeyer having continually for the past eight years given medical treatment to patients at the offices of Dr. Talbert W. Hughes, under the direction and instruction of the said Talbert W. Hughes."

Respondent first contends that this charge states no improper conduct. Steinmeyer was a technician in respondent's office and as such, it is claimed, had the right to perform certain duties "under the

direction and instruction'' of the doctor. Furthermore, respondent contends the board has no right to show that Steinmeyer, although not licensed, treated patients at the instance of the respondent and not under his immediate supervision because such conduct is not embraced within the charge. The statute requires an exact statement of the charges. We have held that mere innuendoes do not meet such requirement. Horton v. Clark, 316 Mo. 770, 293 S. W. 362.

While the latter part of the charge is not skillfully or precisely expressed and may be subject to a double meaning if considered by itself, still there can be no doubt as to the offense charged when it is read in connection with the part preceding it. Also this latter part is surplusage. The first part expresses definitely, clearly and exactly the offense charged. It fully apprised respondent of the accusation against him and afforded him the opportunity of preparing the precise evidence needed for his defense in refuting the charge.

The evidence was sufficient to support the charge. Steinmeyer was employed full time by respondent. At first he kept books, then became a technician. Respondent specialized in the treatment of venereal diseases in men. At the instigation and with the knowledge of respondent, Steinmeyer, though not a physician, received and examined patients in respondent's office, made diagnoses, determined the treatment, treated them and accepted fees from them for respondent. He would do this without any immediate supervision of respondent and at times when respondent was away from the office. Such acts of Steinmeyer constitute the practice of medicine. Practicing without a license is unlawful. When done at the command and with knowledge and aid of a physician, the latter is guilty of unprofessional conduct. The very purpose of the act in protecting the public from untrained and incompetent persons is thereby violated by one who should be foremost in upholding it. See Dilliard v. State Board of Medical Examiners, 69 Colo. 575, 196 Pac. 866. Some of the states by statutes have declared such conduct to be unprofessional.

Proof of either one of the two charges above discussed was sufficient to sustain the board's revocation of respondent's license. Because a number of charges were alleged it was not necessary to prove all of them. Therefore, we need not discuss the other charges.

It follows that the judgment of the circuit court quashing the record of the board and ordering respondent's license restored should be reversed; and the cause should be remanded with directions to enter judgment affirming the order of the board revoking respondent's license. It is so ordered. All concur.