STATE OF MISSOURI, at the Relation of BEN B. STEWART, Acting Warden of the Missouri State Penitentiary, Relator, v. SAM C. BLAIR, Circuit Judge of the Fourteenth Judicial Circuit of Missouri.—No. 40276.—203 S. W. (2d) 716.

Court en Banc, July 14, 1947.

J. E. Taylor, Attorney General, and Gordon P. Weir, Assistant Attorney General, for relator.

*Smith B. Atwood* and *S. W. James, Jr.,* for respondent.

TIPTON, C. J.—This is an original proceeding in certiorari to review the record of a habeas corpus case of Ervin Galloway v. Ben B. Stewart, Warden, Missouri State Penitentiary, tried in the circuit court of Cole County, Missouri. That court found that Galloway, hereafter referred to as the petitioner, was unlawfully convicted under the habitual criminal act for the reason that he had not been discharged from his former sentence by pardon or compliance with that sentence, and that, therefore, his sentence is erroneous as to time. The petitioner was thereupon sentenced to a term of fourteen years and three months in the penitentiary for the offense of larceny of an automobile.

We will adopt substantially the respondent's statement of facts in his brief.

On September 16, 1946, the petitioner, Ervin Galloway, filed his petition for a writ of habeas corpus in the circuit court of Cole County, Missouri. His petition alleged that he was unlawfully deprived of his liberty by the warden of the Missouri State Penitentiary by reason of having been convicted on November 3, 1934, in the circuit court of Pettis County, Missouri, of the crime of larceny of an automobile and given the maximum sentence of twenty-five years in the penitentiary, under the habitual criminal act, while at large from the penitentiary under a conditional commutation of a prior sentence of five years which had been imposed upon him under date of November 1, 1930, for first degree robbery by the circuit court of Jackson County, Missouri. He alleged that the Pettis County circuit court sentence was unlawful and illegal because he had not been discharged from the prior sentence imposed upon him by the circuit court of Jackson County, either by pardon or upon compliance with the sentence, at the time he was charged and convicted under the habitual criminal act.

Issuance of the writ was waived and relator filed his return to the petitioner's petition, alleging that relator has lawful custody and restraint of petitioner under the judgment of the circuit court of Pettis County. A certified copy of that judgment was attached to his return.

The petitioner's exhibits and evidence showed that he was released upon conditional commutation of the sentence imposed upon him by the circuit court of Jackson County under date of August 14, 1933, which required that he make reports thereunder every sixty days up to October 31, 1935, and that the same was revoked by the governor of Missouri on November 28, 1934, subsequent to the judgment and sentence of the circuit court of Pettis County.

The relator introduced in evidence a certified copy of the information filed against the petitioner in the circuit court of Pettis County, charging him with larceny of an automobile, the prior conviction in the circuit court of Jackson County, and his imprisonment under said sentence from December 4, 1930, to August 14, 1933, which alleged that on that date he was "lawfully discharged . . . upon lawful compliance with said judgment and sentence aforesaid," and a certified copy of the judgment and sentence of the circuit court of Pettis County.

The respondent seeks to justify his ruling by contending that our case of State v. Brinkley, 354 Mo. 1051, 193 S. W. 2d 49, decided March 11, 1946, overruled our case of State v. Asher, 246 S. W. 911, decided December 9, 1922, and, therefore, that at the time the petitioner was tried in the circuit court of Pettis County in 1934, under our rulings in the Asher case, he was deprived of his defense that he was not subject to prosecution as an habitual criminal, since at that time he was at large under a parole from the governor. He also contends that his right to this defense was restored when the Brinkley case overruled the Asher case, and that the ruling in the Brinkley case is retroactive to the Asher case and has the effect of a declaration that the ruling in the Asher case never was the law. Under these circumstances, respondent contends that habeas corpus is the proper remedy to prevent a miscarriage of justice.

The Brinkley case did not overrule the Asher case. They are distinguishable on facts. The facts on this point, as stated in the Brinkley case, are as follows:

"In prosecuting appellant in this case under the habitual criminal statute, Sec. 4854, the State alleged and proved: that he had previously been convicted on September 21, 1942 of the crime of larceny from the person of an amount less than $30 (a felony under Secs. 4460 and 4864) and sentenced to the St. Louis City workhouse for five months; that he was paroled by the court on November 25, 1942; and was still out on that parole when he committed the instant homicide on September 12, 1943." 193 S. W. 2d l. c. 57.

In ruling that point, we said:

"But the courts do not have the pardoning power; and the parole in the instant case was judicial and statutory." 193 S. W. 2d l. c. 58.

The effect of the opinion in the Brinkley case was that a parole by a court is not equivalent to a pardon and, therefore, a defendant who is out on a statutory court parole cannot be punished under the habitual criminal act.

The facts in the Asher case were that the defendant was convicted as an habitual criminal of robbery in the first degree and was sentenced to life imprisonment in the penitentiary. In that case the information charged that on December 19, 1912, the defendant was convicted of murder in the first degree and sentenced to life imprisonment in the penitentiary. He was imprisoned in accordance with the sentence and "was duly discharged from said penitentiary of the State of Missouri under a parole of the governor of the State of Missouri on December 20, 1917." The point was made that a parole was not a pardon and, therefore, the defendant was not subject to the habitual criminal act.

In ruling that point, we said:

"The essential allegations of the information in reference thereto are the fact of the conviction, *and the fact of the discharge under such circumstances as would negative the inference that such discharge was by habeas corpus, or by order of the court.* In other words, if the conviction is a finality and the discharge of the defendant is occasioned by an act of grace of the executive, whether by a full pardon or by a conditional pardon, sometimes called a parole, the defendant is subject to a severer penalty upon a second conviction. The same is true if he had complied with his sentence. State v. Manicke, 139 Mo. 545, 41 S. W. 223." 246 S. W. 2d l. c. 913. (Italics ours.)

In other words, the holding in the Asher case was to the effect that if a defendant had been discharged from the penitentiary, either by an absolute or conditional pardon and not by a court, he was subject to the habitual criminal act if he later committed a criminal offense. It also held that a parole by the governor was in reality a conditional pardon.

We are of the opinion that both the Brinkley and Asher cases were properly ruled under the facts of each case, as we will presently demonstrate.

The habitual criminal act, Section 4854, R. S. Mo. 1939, reads:

"If any person convicted of any offense punishable by imprisonment in the penitentiary, . . . shall be discharged, either upon pardon or upon compliance with the sentence, and shall subsequently be convicted of any offense committed after such pardon or discharge, he shall be punished as follows: . . . "

At the time the petitioner was convicted in the circuit court of Pettis County the Constitution of 1875 was in effect, and Article V, Section 8 provided:

"The Governor shall have power to grant reprieves, commutations and pardons, after convictions, for all offenses, except treason and cases of impeachment, upon such condition and with such restrictions and limitations as he may think proper . . ."

"A pardon is an act of grace proceeding from the power intrusted with the execution of the laws, which exempts the individual on whom it is bestowed from the punishment the law inflicts for a crime he has committed." 46 C. J. 1181, Sec. 1.

A conditional pardon is defined as follows: "The power to grant a pardon includes the power to grant a conditional pardon, the condition to be either precedent or subsequent. . . . The condition may be of any nature so long as it is not illegal, immoral, or impossible of performance. The conditions are essential parts of such a pardon, and to be operative must appear on the face thereof." 46 C. J. 1200, Secs. 55, 56.

The Constitution of 1875 expressly gave the governor the right to grant a conditional pardon as shown by the use of the clause, "upon such condition and with such restrictions and limitations as he may think proper."

Section 4188, R. S. Mo. 1939, reads:

"In all cases in which the governor is authorized by the Constitution to grant pardons, he may grant the same, with such conditions and under such restrictions as he may think proper."

Thus, we see that only the governor has the right to grant pardons. State v. Sloss, 25 Mo. 291; Ex parte Thornberry, 300 Mo. 661, 254 S. W. 1087. They may be either absolute or conditional pardons.

Sections 4199 to 4214 inclusive give the trial courts of this state a right to grant paroles upon conditions to persons of previous good character who are convicted of certain crimes and state the conditions upon which a parole may be granted or revoked, and provide that a convicted person who has been delivered to the warden of the penitentiary cannot be paroled by the court.

In the Brinkley case we were dealing with a judicial parole, and with this fact in mind we defined a parole as follows:

"Furthermore, by the great weight of authority a parole is not a conditional pardon. Out of 47 judicial definitions of 'parole' in 31 Words and Phrases, Perm. Ed., p. 102, only six [these including the Asher and Murphy cases from this state] say a parole is a conditional pardon. It is rather a conditional release of the prisoner from confinement having as its objective his rehabilitation, and operating much as if an indeterminate sentence had been imposed in the first place. The prisoner is conditionally released from physical

custody, but his conviction and sentence remain in force and he continues in constructive custody." 193 S. W. 2d l. c. 58.

We have already seen that the governor may grant a conditional pardon upon any conditions that he may see fit, provided the conditions are not illegal, immoral or impossible of performance. He may attach the same conditions that are required of a statutory court parole, and he often does just this. That may be the reason that an executive conditional pardon is often spoken of as a parole; but, technically, he does not grant paroles but pardons, either absolute or conditional. In fact, the 1945 Constitution expressly prevents the governor from granting paroles.

From what we have said, it must follow that a parole granted by the trial court does not subject the recipient to later being tried as an habitual criminal, whereas the habitual criminal act does apply to one who has received a conditional pardon from the governor.

■ We hold that respondent exceeded his authority in ruling that the petitioner was not subject to the habitual criminal act. It follows that respondent's record should be quashed. It is so ordered. All concur, except *Ellison, J.*, who dissents in separate opinion.

ELLISON, J. (dissenting).—■ For the reasons stated in State v. Brinkley, 354 Mo. 1051, 1072(10), 193 S. W. (2d) 1049, 1057(15), I dissent from the principal opinion insofar as it overrules that case. The Brinkley case followed State v. Christup, 337 Mo. 766, 779-780, 85 S. W. (2d) 1024(1), where it was held that a convict imprisoned for a prior crime who escaped and committed a second offense, was not amenable to punishment under the habitual criminal Act. The Christup case followed State v. Austin, 113 Mo. 538, 541, 21 S. W. 21, 22, where an indictment under the Act failed to use the language of the statute, Sec. 4854. And both of these decisions followed Wood v. People, 53 N. Y. 511, which State then had a statute identically like ours.

Sec. 4854 [which is 112 years old] provides that if an accused shall have been convicted of a felony in *this* state, and shall have been "discharged either upon pardon or upon compliance with the sentence;" and if subsequently he be convicted of another felony *committed after* such pardon or discharge, then for the latter offense he shall receive the maximum punishment up to but not beyond life imprisonment. The next section, 4855, provides that in case the first felony be committed in *another* jurisdiction then it need only be shown that he was "convicted" thereof—there is no requirement of any showing of a discharge. So it is clear the ■ provisions of Sec. 4854 have a definite significance, and that proof of discharge from the first conviction before the commission of the second offense is essential.

The Wood case, supra, from New York held the word "discharged" in the same statute there was the important word, because so long as the prior sentence had not been discharged, there would be a possibility that it might be set aside by arrest of judgment, reversal or habeas corpus. And in that event, of course, the accused would not be an habitual criminal at all. The Wood case was followed in New York until the statute was changed. And if its construction be correct, then it is clear the discharge must be complete, or if conditional the condition must have been performed, so that the former conviction cannot be called into question.

But the principal opinion, following State v. Asher, 246 S. W. 912, 913, holds the word "pardon" includes a conditional pardon; that an executive parole is a conditional pardon; and that a conditional pardon is a discharge under Sec. 4854. The first of these statements is true. The second is contrary to the great weight of authority. Out of forty-seven judicial definitions of "parole" in 31 Words & Phrases (Perm. Ed.) p. 102, all but six are to the contrary. And the third is not correct at all in my opinion.

Even though it be conceded a parole by the Governor is a conditional pardon, it would not bring the case within Sec. 4854 unless and until the conditions of the parole had been performed, for up to then it would be revocable; the prisoner would still be "under sentence" for the first offense, Herrring v. Scott (Mo. banc), 142 S. W. (2d) 670, 671-2; and he would not be legally discharged until the term of the sentence had fully expired, for that is the condition of executive paroles, Sec. 9226, R. S. 1939-Mo. R. S. A., though an absolute discharge may be granted sooner under court paroles, Sec's 4201, 4202, 4206, R. S. 1939-Mo. R. S. A.

The point, however, is that unless the Governor has granted a full pardon, or an unconditional commutation reducing the prisoner's sentence to the time he has already served; or unless the circuit court has granted an absolute discharge; or unless the terms of any conditional parole have been performed; then there has been no *discharge* within the meaning of Sec. 4854, and the accused cannot be prosecuted under that statute. If a prisoner who is not even worthy of a parole, and who escapes and commits a second felony, cannot be prosecuted under that section, how can it be said that a parolee can be?

There are several decisions from other states which support the view here expressed. The Connecticut habitual criminal statute is directed against a defendant who has "twice before been convicted, sentenced and imprisoned." And it was held in State v. Mead, 130 Conn. 106, 109-110, 32 Atl. (2d) 273, 275(2) this did not require a completion of the sentence. But the decision pointed to the difference between that statute and ours, which requires that there be also a discharge by pardon or compliance with the sentence, citing the Christup case. Likewise Texas has an habitual criminal statute more like our Sec.

4855, which provides that if it be shown on the trial of a felony that the defendant has previously been convicted of the same offense, or one of the same nature, then he shall receive the maximum punishment on the second or other subsequent conviction. In Warren v. State, 127 Tex. Crim. App. 71, 74 S. W. (2d) 1006, the defendant had been convicted of a prior felony, but he maintained the conviction had been remised and forgiven by a gubernatorial pardon. But it developed that the pardon, though full, would take effect only at the end of his sentence, and the Texas Court held it was not full in such sense as wiped out and discharged the former conviction.

Other decisions substantially to the same effect are State v. Lee, 171 La. 744, 132 So. 219, and Randall v. State, 73 Ga. App. 354, 36 S. E. 450, 463(3), certiorari denied, 67 S. Ct. Rep. 72. In these cases as in the Texas case, the result was just the opposite of that contended for here—in other words the prisoner was convicted. But that was because of the difference in the statutes. In those states the accused may be convicted as a second offender *unless* he had been pardoned. In this state he *cannot* be convicted unless he has been discharged by a pardon or compliance with the sentence.