247 S.W.2d 969 (1952)
STATE ex rel. OLIVER et al.
v.
HUNT, Judge of Division Number Four of the Circuit Court of Jackson County.
No. 42868.
Supreme Court of Missouri, en Banc.
April 14, 1952.
*970 David M. Proctor, Jr., Kansas City, for relators.
Gregory Hodges, Kansas City, for respondent.
HOLLINGSWORTH, Judge.
Original proceeding in certiorari. Relators compose the Board of Election Commissioners of Kansas City. Respondent is one of the judges of the Circuit Court of Jackson County and as such rendered the judgment in the proceedings here under review.
The issue is whether one Sam Yagan is entitled to register as a legal voter of Kansas City. Respondent held he was and ordered relators to permit him to do so. Relators urge that the validity of that judgment rests upon the constitutionality of V.A.M.S., § 549.170, RSMo 1949, one of the sections of the act relating to judicial paroles, and that, for the reasons hereinafter stated, said section is unconstitutional. This act is set forth in V.A.M.S., §§ 549.060-549.190, RSMo 1949. Section 549.170 reads:
"Any person who shall receive his final discharge under the provisions of sections 549.060 to 549.180, shall be restored to all the rights and privileges of citizenship."
The record certified for review shows that:
(1) On September 15, 1932, Yagan, then twenty-one years of age, pleaded guilty in the Circuit Court of Jackson County to two offenses of blackmail, and was sentenced on each offense to a term of two years confinement in the penitentiary, such terms to run concurrently.
(2) On November 18, 1932, and before being committed to the penitentiary, Yagan was granted a parole from his sentences by the Board of Paroles of Jackson County.
(3) On June 1, 1940, Yagan, having complied with all the terms of his parole, was granted a final discharge.
(4) On February 5, 1942, Yagan applied for and was registered as a voter in Kansas City, and thereafter voted in various elections in said city from the time of his registration through the year 1948.
(5) On or about June 14, 1950, Yagan's registration of February 5, 1942, was cancelled by relators, for the reason that he had not received a full pardon from the governor for the offenses to which he had pleaded guilty on September 15, 1932, and he was notified of that fact.
*971 (6) On February 7, 1951, Yagan made written application for registration as a voter at 7101 The Paseo, Kansas City. The written application recited substantially the facts as stated in paragraphs numbered 1, 2 and 3, supra. Aside from these facts, the application showed that Yagan was otherwise qualified as a voter in said city. Relators were equally divided in their opinions upon the granting of the application. The division of opinion arose over the question of validity and effect of Section 549.170 RSMo 1949, V.A.M.S. Two of the relators were of the opinion that Section 549.170 was and is unconstitutional, being violative of Section 8, Article V, and Article III of the Constitution of Missouri 1875, V.A.M.S., and that the application should be denied by virtue of Section 560.610, Section 111.060 and Section 117.040, RSMo 1949, V.A.M.S. Failing to receive a majority vote, it was denied.
(7) On February 8, 1951, Yagan appealed to the Circuit Court of Jackson County under the provisions of Section 117.490 RSMo 1949, V.A.M.S., his appeal resulting in the judgment aforesaid.
Section 117.040 denies the right of suffrage to persons convicted of a felony. Section 111.060, relating to the qualifications of voters, provides: "* * * nor shall any person convicted of a felony * * * be permitted to vote at any election unless he shall have been granted a full pardon; * * *." Section 560.610, relating to the forfeiture of civil rights of persons convicted of certain crimes, after exempting persons under twenty-one years of age when convicted, provides that the civil disabilities therein declared as an incident of conviction of the crimes therein enumerated may be removed by the pardon of the governor. Section 222.030, relating to the removal of civil disabilities following conviction of certain crimes, provides that such disabilities may be removed by a pardon by the governor, and not otherwise.
The parole law, inclusive of § 549.170, was enacted in substantially its present form in 1897. At that time the Constitution of 1875 was in force, and the constitutionality of Section 549.170 must be determined on that basis. State ex rel. Miller v. O'Malley, 342 Mo. 641, 117 S.W. 2d 319. Also, Yagan was discharged from parole on June 1, 1940, and his rights under Section 549.170 must be likewise determined under the Constitution of 1875. State ex rel. Stewart v. Blair, 356 Mo. 790, 203 S.W.2d 716, 718. However, all of the hereinafter discussed provisions of that Constitution were carried forward into the Constitution of 1945.
Relators contend that Section 549.170 is violative of Section 8, Article V, and Article III of the Constitution of 1875, in that it encroaches upon the power of pardon bestowed solely upon the governor. They assert that the rights of citizenship (which concededly include the right of suffrage) purportedly restored to Yagan by Section 549.170 is an inseparable incident and identical with the effect of a full pardon.
They further assert that Section 549.170 is clearly separable from the other provisions of the parole law and that a declaration of its unconstitutionality would not affect the constitutionality of the remainder of the law. True, such a declaration would not expressly do so, but may it not place a cloud upon the constitutionality of the whole concept of the parole law? And other acts of the legislature presently to be mentioned? For example: The parole law authorizes the trial court, upon the conditions therein set forth, to immediately suspend a sentence ofsay, twenty years for felonious assaultand two years thereafter, if the convict has complied with the terms of his parole, to finally discharge him from such sentence. Does this not, insofar as it relieves the convict of penal servitude, have the same effect as a pardon? So, too, would not such a declaration cast doubt upon the validity of the so-called "three-fourths rule" (§ 217.370), which provides that any convict who has served three-fourths of his sentence in a peaceable manner, et cetera, "shall be discharged * * * and in such case no pardon from the governor shall be required; * * *"? See Ex parte Parker, 106 Mo. 551, 17 S.W. *972 658. And, also, would it not cast doubt upon the constitutionality of one of the provisions of § 560.610? That section declares that persons convicted of certain offenses shall be disqualified from voting at any election or holding any office of honor or trust or profit without a pardon from the governor, but further provides that the act "shall not apply to any person who at the time of his conviction shall be under the age of twenty years".
Prior to the enactment of the parole law in 1897, all persons, no matter how extenuating the circumstances, were upon conviction forced to undergo the punishment fixed by statute. After undergoing the stigma and degradation of imprisonment, they far too often became vicious repeaters. Following the enactment of this law, tens of thousands of men, given the supervision and encouragement of its provisions, have been restored to good citizenship. Thousands of these men, who, but for the very statute here sought to be declared unconstitutional, would be branded as felons, unworthy of the right of franchise, unworthy to serve as jurors or to hold positions of honor or trust, are today exercising those rights with honor to themselves and this State. These privileges ought not be taken from them, nor should future transgressors be denied the incentive of reformation that Section 549.170 has so successfully inspired in others since its enactment, unless there is impelling reason for so doing. Society would not profit thereby.
Presumptively, the law is constitutional. Varble v. Whitecotton, 354 Mo. 570, 190 S.W.2d 244. The fact that Section 549.170 has been accepted without question for more than fifty years by the executive and legislative branches of our government is persuasive of its constitutionality. State v. McGee, 361 Mo. 309, 234 S.W.2d 587. The constitutionality of parole laws in general is consistently upheld. 15 Am.Jur. § 499, p. 149; 24 C.J.S., Criminal Law, p. 173, § 1618.
Relators rely strongly upon State v. Grant, 79 Mo. 113, decided in 1883, and State v. Sloss, 25 Mo. 291, decided in 1857. We think these cases are readily distinguishable.
In State v. Grant, supra, the court held that an amendment to a statute removing from the original statute a clause declaring that a convict was incompetent to testify as a witness was not intended to apply, and could not constitutionally apply, to make a competent witness of one convicted prior to the amendment. In so holding the court said that if the amendment was meant to apply retrospectively it would encroach upon the pardoning power of the governor for the reason that it had the effect of a pardon. The court did not hold that insofar as the amendment operated prospectively it would encroach upon that power. In this case we are not considering whether Section 549.170 would be constitutional as to persons convicted prior to the enactment of the parole law in 1897. We are only considering its constitutionality as to persons convicted subsequent to its enactment.
In State v. Sloss, supra, the court held unconstitutional an act of the legislature which declared that "all persons in the State of Missouri, who are now indicted for a violation of said law [a law regulating dramshops] committed before the 15th of December, 1856, be and they are hereby released from said prosecution; * * *." The court said this was an attempted invasion of the pardoning power and an unlawful interference with judicial power. That case is not in point.
Relators also cite People v. Pease, 3 Johns.Cas., N.Y. 333; People v. Bowen, 43 Cal. 439, 13 Am.Rep. 148; Wood v. Fitzgerald, 3 Or. 568; Jones v. Board of Registrars, 56 Miss. 766, 31 Am.Rep. 385; Rison v. Farr, 24 Ark. 161, 87 Am.Dec. 52; In re Executive Communication, 14 Fla. 318; Veto Message, Gov. Lilburn W. Boggs, December 28, 1836, Mo.Sen.Journal, 1836-37, pp. 160-162. All of these cases and executive communications were written long prior to any general knowledge or acceptance of parole laws. Some we do not consider in point on the issue here involved; the others are not now persuasive. Another case cited is Donham v. Gross, 210 Cal. *973 190, 290 P. 884, which is clearly not applicable here.
Section 549.170 does not take from the governor one whit of the power of pardon vested in him by the Constitution. He may grant pardons as freely now as he did prior to the enactment of Section 549.170. The power of the governor to pardon and the power of the legislature (subject to the limitations placed upon it by the Constitution) to say who shall exercise the rights of citizenship differ in origin and concept. The distinction is noted in Moore v. Thorn, 245 App.Div. 180, 281 N.Y.S. 49, 53, wherein it was held that "The power to suspend sentence and the power to grant reprieves and pardons, as understood when the Constitution was adopted, are totally distinct and different in their origin and nature. The former was always a part of the judicial power." While, in this State, we have not held that the power to suspend sentences was inherently vested in the courts, yet, unless the pardoning power granted the governor by the Constitution precludes it from so doing, it is within the power of the legislature to invest the courts with that right. The parole law does that very thing. There is no distinction in principle between suspension of sentence and restoration of civil rights as provided by Section 549.170. Both, to the extent each is operative, have the effect of a pardon. But this does not make them synonymous.
"A pardon is an act of grace proceeding from the power intrusted with the execution of the laws, which exempts the individual on whom it is bestowed from the punishment the law inflicts for a crime he has committed. 46 C.J. 1181, Sec. 1." State ex rel. Stewart v. Blair, 356 Mo. 790, 795, 203 S.W.2d 716, 718. In effect, a pardon issues upon ipse dixit of the governor. 39 Am.Jur. § 14, pp. 527-528. It is conceived in mercy and is said to be in derogation of law. 39 Am.Jur. § 13, pp. 526-527.
Entirely different, however, is the concept of the benefits of Section 549.170 under the judicial parole law. Their purpose is incentive to reformation and rehabilitation, not mercy. Only a person of previous good character and who has not been previously convicted of a felony, and who does not stand convicted of murder, rape, arson or robbery, may be granted a judicial parole. The court before whom he was convicted must be satisfied that if permitted to go at large he will not again violate the law. He is placed under the supervision of the court for a statutory period of time, depending upon the nature of the crime, with such restrictions upon his conduct as the court may impose. If he violates the law or the restrictions placed upon him by the court, the parole is immediately revocable. If and when the court, within the time fixed by statute, deems his reformation is complete, he is granted a discharge.
We hold that the foregoing provisions of the Constitution do not prohibit the legislature from declaring a person whom the court has found to be worthy of parole and whom the court has finally discharged as completely reformed shall be restored to all rights of citizenship. Furthermore, we find there is clear constitutional sanction of the power of the legislature to restore the right of suffrage to such a person.
By both the Constitutions of 1875 and 1945, Section 2, Article VIII of each, it is provided that "* * * persons convicted of felony, or crime connected with the exercise of the right of suffrage may be excluded by law from voting." This clause vests wide discretion in the legislature to determine the extent to which persons convicted of felony may be excluded from the right of suffrage. There is no intimation in the clause that a law enacted under it may not except from its provisions those who have proved themselves worthy of that right under the judicial parole law.
The statutes, §§111.060, 560.610, 222.030, denying to persons convicted of felony the rights and privileges of citizenship until restored by pardon, and Section 549.170, restoring that right to persons granted a final discharge under the parole law, must be considered in pari materia. Eagleton v. Murphy, 348 Mo. 949, 156 S.W.2d 683, 138 A.L.R. 749. The first three were enacted in substantially their present *974 form long prior to the latter. The latter creates an express exception to them and to the extent of its provisions supercedes them. State ex rel. City of Springfield v. Smith, 344 Mo. 150, 125 S.W.2d 883, 885; State v. Mangiaracina, 344 Mo. 99, 125 S.W.2d 58, 60. It is clear, we think, that had the legislature added what is now Section 549.170 as a proviso to the aforesaid sections relating to forfeiture of the right of suffrage, such proviso would come clearly within the purview of the power granted the legislature by the aforesaid Sections 2 of Articles VIII of the 1875 and 1945 Constitutions. That is exactly the effect of Section 549.170.
The right of relators to question the constitutional validity of Section 549.170 is not raised in the briefs and we do not here rule that question. It is well to note, however, that if boards of election commissioners may refuse registration to any person otherwise qualified as a legal voter on the ground of unconstitutionality of a statute purportedly investing him with that right, then it inevitably follows that the judges in any one of the more than four thousand precincts in this State may also place a like construction upon similar statutes. In this connection, see: State ex rel. State Board of Mediation v. Pigg, Mo.Sup., 244 S.W.2d 75; State ex rel. Sommer v. Calcaterra, Mo.Sup., 247 S.W.2d 728; State ex rel. Wulfing v. Mooney, Mo.Sup., 247 S.W.2d 722; State ex rel. McNary v. Mooney, Mo. Sup., 247 S.W.2d 726.
The writ of certiorari issued herein should be and is quashed.
ELLISON, C. J., and CONKLING, LEEDY, DALTON and HYDE, JJ., concur.
TIPTON, J., not sitting.