John Hillary DURHAM,
Movant-Appellant,

v.

STATE of Missouri, Respondent.

No. 39228.

Missouri Court of Appeals,
St. Louis District,
Division Three.

Aug. 1, 1978.

Motion for Rehearing and/or Transfer
Denied Sept. 15, 1978.

Application to Transfer Denied
Nov. 6, 1978.

Kevin O'Keefe, St. Louis, for movant-appellant.

John D. Ashcroft, Atty. Gen., Paul Robert Otto, Katherine Marie Krause, John M. Morris III, Asst. Attys. Gen., Jefferson City, George A. Peach, Circuit Atty., John Gillespie, Asst. Circuit Atty., St. Louis, for respondent.

WEIER, Judge.

Movant appeals from the denial of his Rule 27.26 motion to set aside a 1965 conviction and 35 year sentence for statutory

rape. The grounds for relief asserted in movant's first amended motion and carried forward in his brief on appeal center around the allegedly illegal and unconstitutional use at movant's trial of the record of seven previous convictions for which movant had received pardons from the Governor of Missouri in 1963. These pardoned convictions were used to invoke the provisions of the Habitual Criminal Act, § 556.-280 RSMo. 1959, as amended Laws 1959, S.B. No. 117, § 1,[1] and to impeach the credibility of movant when he took the stand to testify in his own defense. We affirm.

In October 1939 movant pleaded guilty to four counts of robbery in the first degree and two counts of using a motor vehicle to escape the scene of a robbery. He was sentenced to twelve years imprisonment on each count, the sentences to run concurrently. In 1956 movant pleaded guilty to one count of manslaughter. His sentence on this charge was two years. Movant was pardoned for these seven felony convictions by the Governor of Missouri on October 8, 1963. The pardon in pertinent part, states:

> "That, by virtue of authority in me vested by law, and for good and sufficient reasons appearing, I, JOHN M. DALTON, Governor of the State of Missouri, do hereby pardon, release, discharge and forever set free JOHN HILARY DURHAM . . . and I do hereby restore to him all the rights of citizenship and entitle the said JOHN HILARY DURHAM to all the rights, privileges and immunities which by law attach to and result from the operation of these presents . . ."

On cross-examination at the 27.26 hearing movant testified about the basis for his application for the pardon as follows: "The main reason I applied was I had been in prison, and I was working at, you know, it's a state law that prisoners cannot have liquor and the Liquor Control told my employer that they would not issue him a liquor license until he fired me, and my employer didn't want to fire me so he told me I should try to do something about it." Movant said the reason he gave the governor why he should be pardoned was "[b]ecause I felt I have a right to make and earn my living. Here a man's going to lose his liquor license because he wanted to employ me, and I thought it was wrong, and that's the main reason I felt the Governor would understand that."

In December 1965 movant was convicted of statutory rape of an eleven year old girl. The indictment, filed January 23, 1964, listed the seven pardoned convictions to bring the charge under the Habitual Criminal Act, § 556.280 RSMo. 1959, as amended Laws 1959, S.B. No. 117, § 1. Movant testified at that trial. He denied committing the crime and said he was elsewhere when the crime occurred. On cross-examination the prosecutor used the seven pardoned convictions to impeach his credibility. Defense attorney's objection on the ground that movant's pardon precluded the use of the former convictions for impeachment was overruled. The prosecutor also brought out the fact that movant had served time in federal prisons for a conviction of perjury. On redirect examination movant admitted he was guilty of the six offenses to which he had pleaded guilty in 1939 but he said he was not guilty of the manslaughter charge. He wasn't allowed to discuss the federal charge. Movant put on evidence that he had been pardoned for the seven Missouri convictions. One of the instructions given the jury at the close of all the evidence stated: "The Court instructs the jury that any testimony in this case relative to any prior conviction of the defendant is admissible for the purpose of affecting the credibility of this defendant as a witness and the weight to be given to his testimony, and then only if you find it does affect the credibility and weight of such testimony, and is to be considered by you for no other purpose." Both sides referred to the convictions as well as the pardon in closing

---

1. Now generally called the "Second Offender Act." Under the provisions of the amended statute the punishment is not enhanced by reason of a prior conviction nor is it a separate offense. *State v. Maxwell,* 411 S.W.2d 237, 239[1] (Mo.1967).

argument. The jury found movant guilty. Movant's motion for new trial raised the issue of using pardoned convictions to invoke the Habitual Criminal Act but it did not mention the issue of impeachment on the basis of the pardoned convictions. The trial court sentenced movant, under the provisions of the Habitual Criminal Act, § 556.280 RSMo. 1959, as amended Laws 1959, S.B. No. 117, § 1, to 35 years imprisonment. This was affirmed on appeal, *State v. Durham,* 418 S.W.2d 23, 26–27[2–5] (Mo. 1967). The Missouri Supreme Court in that opinion ruled that use of the pardoned convictions to invoke the provisions of the Habitual Criminal Act was constitutional and proper. The issue of impeachment by showing the pardoned convictions was not raised.

Movant later filed a Rule 27.26 motion which was denied by the trial court. On appeal the supreme court remanded the case for further proceedings. *Durham v. State,* 473 S.W.2d 397 (Mo.1971). After remand the trial court again denied the motion and this action was affirmed by this court. *Durham v. State,* 538 S.W.2d 881 (Mo.App.1975). Movant next filed a petition for a writ of habeas corpus in the federal district court. The district court's denial of his petition was affirmed on appeal. *Durham v. Wyrick,* 545 F.2d 41 (8th Cir. 1976). Several months before the Eighth Circuit Court of Appeals' decision was handed down movant filed this Rule 27.26 motion. As stated in this last opinion, movant had been paroled in 1974 but his parole was revoked in January 1976.

Then in *Guastello v. Department of Liquor Control,* 536 S.W.2d 21 (Mo.1976), the Missouri Supreme Court held that the Supervisor of Liquor Control for the State of Missouri could not deny a person a liquor license on the grounds that the applicant had been convicted of violating a law relating to intoxicating liquor if the applicant had received a gubernatorial pardon for all such convictions. The court adopted the view that a pardon obliterated the fact of conviction but the guilt remained. Near the end of the opinion, *Guastello, supra* at 25, the court discussed three related cases as follows:

"It is suggested that some comment should be made as to the effect of today's decision on the holdings in *State v. Asher,* 246 S.W. 911 (Mo.1922); *State ex rel. Stewart v. Blair,* 356 Mo. 790, 203 S.W.2d 716 (banc 1947); and *State v. Durham,* 418 S.W.2d 23 (Mo.1967). They stand for the proposition that if a defendant is pardoned after conviction, he remains subject to the Habitual Criminal Act if he later commits a criminal offense. It would seem apparent that if a defendant is pardoned after conviction and, as decided today, that conviction is thereby obliterated, such 'obliterated conviction' could not be used as the basis for subjecting defendant to the Habitual Criminal Act if he later committed a criminal offense. Accordingly, from this time forward, the holdings in *Asher, Blair* and *Durham,* to the extent they conflict with this opinion, should no longer be followed."

The trial court here concluded that the ruling in *Guastello* was to be applied prospectively only. Movant contends this conclusion is clearly erroneous, Rule 27.26(j), and that *Guastello* should apply retroactively so that movant should be retried and, if found guilty, have punishment fixed by the jury. If *Guastello* should have retroactive effect, then the use of movant's pardoned convictions to invoke the Habitual Criminal Act would be improper and movant would be entitled to a new trial on all issues. *See, State v. Harris,* 547 S.W.2d 473, 476[3] (Mo. banc 1977).

Movant and the State agree in their briefs that the Missouri Supreme Court in *Guastello* did not decide the specific issue of retroactivity as it relates to the Habitual Criminal Act. An analysis of the phrases used in that opinion would not seem to be dispositive of the question. This is especially true when the phrasing there used is contrasted with the wording of some other Supreme Court cases which have overruled previous decisions and have indicated that

the ruling would be prospective only.[2] Nevertheless it could very well be that prospective application was intended. The words "from this day forward," *Guastello, supra* at 25, would not preclude such an interpretation.

Movant argues that when we analyze the issue of whether the pronouncement in *Guastello* should be given retroactive effect, we must use the criteria utilized by the United States Supreme Court in such decisions as *Johnson v. New Jersey,* 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966); *Tehan v. United States,* 382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453 (1966); and *Linkletter v. Walker,* 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965). The main criteria used in those cases is stated in *Johnson v. New Jersey, supra* at 384 U.S. 272, 86 S.Ct. 1777, as follows: "We must look to the purpose of our new standards . . ., the reliance which may have been placed upon prior decisions on the subject, and the effect on the administration of justice of a retroactive application . . ." *See also, Daniel v. Louisiana,* 420 U.S. 31, 32, 95 S.Ct. 704, 42 L.Ed.2d 790 (1975). The U. S. Supreme Court has also considered as a factor whether the new rule affected "the very integrity of the fact-finding process" and averted "the clear danger of convicting the innocent." *Johnson v. New Jersey, supra* at 384 U.S. 727–28, 86 S.Ct. 1778. *See, State v. Morgan,* 539 S.W.2d 660, 666–67[6] (Mo. App.1976).

These cases deal with the question of retroactive application of new federal constitutional rules. But the new superseding rule announced in *Guastello* is not based on any right guaranteed movant by the U. S. Constitution. *Guastello* did not change the long-standing rule that having punishment fixed by the trial court instead of a jury does not violate a criminal defendant's constitutional rights, including the right to trial by jury under Article I, Section 18(a) and Section 22(a), Constitution of Missouri and the Sixth Amendment to the Constitution of the United States. *State v. Daugherty,* 484 S.W.2d 236, 238–39[3, 4] (Mo.1972); *State v. Maxwell, supra,* 411 S.W.2d 237, 239–40[1, 2] (Mo.1967). As noted in *State v. Daugherty, supra,* at common law and in the federal system, the court, and not the jury, fixes punishment. Although the reasoning and analysis used by the United States Supreme Court in the opinions cited by movant could be helpful if constitutional rights were involved, they are not applicable here.

◼ Generally when a decision overruling previous decisions deals with a rule of procedure, ". . . then the effect of the subsequent overruling decision is *prospective only;* but if the overruled decision is one dealing with substantive law, then the effect of the subsequent overruling decision is retroactive." *Barker v. St. Louis County,* 340 Mo. 986, 104 S.W.2d 371, 377[10] (1937), quoted with approval in *Dietz v. Humphreys,* 507 S.W.2d 389, 392 (Mo.1974).

---

2. *Jones v. State Highway Commission,* 557 S.W.2d 225, 231[11] (Mo. banc 1977) ("In order that an orderly transition be made, that adequate financial planning take place, that governmental units have time to adjust their practices and that the legislature be afforded an opportunity to consider the subject in general, the doctrine [of sovereign immunity] is abrogated prospectively as to all claims arising on or after August 15, 1978, except for the cases decided today as to which abrogation applies here and now."); *Abernathy v. Sisters of St. Mary's,* 446 S.W.2d 599, 606[4] (Mo. 1969) ("We are cognizant of the fact that retrospective application of our decision could result in great hardship to those institutions which have relied on our prior decisions upholding the doctrine of charitable immunity. Therefore, feeling that justice will best be served by

prospective application of the decision announced today, we hold that the new rule shall apply to this case and to all future causes of action arising after November 10, 1969, the date of the filing of this opinion.") *See, State v. Harrington,* 534 S.W.2d 44, 48[2] (Mo. banc 1976) ("We believe, and hold, that the practice of allowing *private* prosecutors, employed by *private* persons, to participate in the prosecution of criminal defendants, is inherently and fundamentally unfair, and that it should not be permitted on retrial of this case or in any case tried after publication of this opinion in the Southwestern Reporter."); *State v. Williams,* 554 S.W.2d 524, 527[1] (Mo.App.1977) (rule in *State v. Harrington, supra,* not applicable to case tried before that opinion was published in Southwestern Reporter).

■ The Habitual Criminal Act, as amended and now generally known as the Second Offender Act, has consistently been held to be procedural in nature, *State v. Donnell,* 351 S.W.2d 775, 779[4] (Mo.1961); *State v. Williams,* 343 S.W.2d 58, 61[4] (Mo. 1961); *State v. Morton,* 338 S.W.2d 858, 863[7] (Mo.1960); *State v. Bevelle,* 527 S.W.2d 657, 662[8] (Mo.App.1975). For this reason we hold the effect of the *Guastello* ruling would be prospective only. Additionally, it appears that applying *Guastello* prospectively only is reasonable and proper. Following the mandate of the Habitual Criminal Act, as amended, the original trial court heard evidence concerning movant's prior convictions outside the hearing of the jury. The rule announced in *Guastello* thus does not affect "the very integrity of the fact-finding process" nor does it avert "the clear danger of convicting the innocent." The purpose of the new *Guastello* standard appears to be simply to announce that pardoned convictions should no longer be used to invoke the Habitual Criminal Act because of the view the court adopted as to the legal effect of a pardon. This purpose is satisfied by prospective application. It is very difficult to gauge both the degree of reliance which may have been placed on the prior rule as well as the effect on the administration of justice of a retroactive application of the *Guastello* decision. In any event, in view of the procedural nature of the new ruling, and the lack of any danger of convicting an innocent person when the old rule (*cf. State v. Durham, supra,* 418 S.W.2d 23 (Mo.1967)) was followed, it appears that justice would be better served if we were to hold, and we do so hold, that the ruling in *Guastello* concerning the Habitual Criminal Act does not have retroactive effect. *See generally,* Prospective or Retroactive Operation of Overruling Decision, 10 A.L.R.3d 1371, 1414–15 § 10.

■ We turn to the other ground asserted by movant in his first amended motion and carried forward in his brief on appeal. This ground concerns the use of movant's pardoned convictions to impeach his credi-

bility when he testified in his own defense in the 1965 trial. On this issue movant first contends the trial court's conclusions that this issue had been raised and decided adversely to movant in his direct appeal and that this precluded movant from raising the issue in a Rule 27.26 motion was prejudicially erroneous requiring reversal for further findings and conclusions. *See* Rule 27.26(i). Contrary to the trial court's conclusions, the issue of the propriety of being impeached by showing convictions for which movant had been pardoned was not raised in movant's direct appeal, *State v. Durham, supra,* 418 S.W.2d 23. But the trial court went on in its conclusions to say that "an intervening change in state law allows the filing of successive motions for post-conviction relief under Rule 27.26(d). *Meeks v. State,* 512 S.W.2d 215 (Mo.App. Springfield D. 1974)"; that *Guastello* changed the law "concerning the legal effect of a gubernatorial pardon"; and "[t]herefore, Movant's allegations concerning the use of his prior pardoned convictions at his trial in 1965 are cognizable in this 27.26 proceeding." The court then noted that *Guastello* had said that an "obliterated conviction" cannot be used to subject a criminal defendant to the Habitual Criminal Act if he later commits a criminal offense but that the ruling in *Guastello* was to be applied prospective only so that *Guastello* "affords no relief to Movant."

Although the trial court's conclusions on this issue may be somewhat imprecise, remand for further conclusions would serve no useful purpose. The trial court reached the correct result in denying this point and it is immaterial that the court may have assigned an erroneous reason for its ruling, *Tollison v. State,* 556 S.W.2d 455, 457[3] (Mo.App.1977); *Umfress v. State,* 512 S.W.2d 178, 179[2] (Mo.App.1974), particularly when we consider that this court has all the information it needs to decide the issue and there are no disputes of fact requiring the trial court to decide if one or more witnesses are credible.[3] This is unlike

---

**3.** At the 27.26 hearing movant proved by the testimony of the chief deputy clerk that a tran-

script of his 1965 trial had been made but could not be found. Movant then testified from

a situation such' as that presented in *State v. Bratton,* 547 S.W.2d 205 (Mo.App.1977) where the credibility of the witness at the 27.26 hearing is a crucial part of the case. The point is denied.

Movant's second contention on this issue is that the trial court was clearly erroneous in concluding that the *Guastello* ruling (with respect to the legal effect of a pardon) should not be given retroactive effect. Movant reasons that the *Guastello* interpretation of the legal consequences of a pardon would prohibit admission of pardoned convictions for impeachment of a criminal defendant, that the use of the pardoned convictions for impeachment at movant's trial rendered the trial "fundamentally unfair" and that the purpose of "such a rule" affects the very integrity of the fact finding process and averts the clear danger of convicting the innocent so that this "rule" should have retroactive effect entitling movant to a new trial.

■ Even if we assume: (1) that *Guastello* makes new law on this subject such that movant is not precluded by Rule 27.-26(d) from raising this issue, *see, Meeks v. State,* 512 S.W.2d 215, 216[1] (Mo.App. 1974); (2) that this error, if any, was not mere trial error, Rule 27.26(b)(3); (3) that there has not been a deliberate by-pass of orderly state procedure, *see, McCrary v. State,* 529 S.W.2d 467 (Mo.App.1975); *cf. Gamache v. State,* 548 S.W.2d 594 (Mo.App. 1977); and (4) that this aspect of *Guastello* would have retroactive effect because it affects the integrity of the fact finding process, still we do not believe movant is entitled to relief. This is because we believe it is permissible, and certainly not fundamentally unfair, even after *Guastello,* to impeach the credibility of a witness by showing pardoned convictions.

"The prosecutor has a statutory right to attack a criminal defendant's credibility by inquiring about his prior convictions when the latter testifies in his own behalf. § 491.050 RSMo. 1969; *State v. Lee,* 492 S.W.2d 28[13] (Mo.App.1973). This form of impeachment, however, is limited to matters concerning the nature and number of the prior offenses; the prosecutor may not go into the details of the prior offenses. *State v. Scott,* 459 S.W.2d 321 (Mo.1970)." *State v. Williams,* 532 S.W.2d 826, 828[7, 8] (Mo.App.1975). *See also, State v. Sullivan,* 553 S.W.2d 510, 514–15[6–8] (Mo.App.1977); *State v. Williams,* 492 S.W.2d 1 (Mo.App. 1973). The statutory authority for this type of cross-examination, § 491.050 RSMo. 1969, provides: "Any person who has been convicted of a criminal offense is, notwithstanding, a competent witness; but the conviction may be proved to affect his credibility, either by the record or by his own cross-examination, upon which he must answer any question relevant to that inquiry, and the party cross-examining shall not be concluded by his answer." This statute evidences a legislative determination that a conviction for a criminal offense does diminish a witness' credibility, "the quality or power of inspiring belief," Webster's Third New International Dictionary (1961), and as such is admissible to impeach the credibility of witnesses. We note that the jury was properly instructed in this case that movant's prior convictions could be considered only for the purpose of affecting his credibility as a witness.

In *Hughes v. State Board of Health,* 348 Mo. 1236, 159 S.W.2d 277 (1942), a physician's license was revoked on the ground that he was an individual of bad moral character. A conviction for a crime involving a moral turpitude (using the mails in furtherance of a scheme to defraud) was there held to constitute evidence of bad moral character sufficient to sustain the action of the board in revoking his license. The court went on to say that "[t]he fact that respondent received a presidential pardon, full and unconditional, in no way af-

---

memory that at his 1965 trial he had been cross-examined about his prior convictions for which he had received pardons when he had taken the stand in his own defense. This court has located a copy of the previously unavailable transcript and it shows that movant had indeed been ·questioned about these convictions.

fects the situation before us. It cannot be construed as restoring good character." The *Guastello* opinion discussed *Hughes* and stated at 24–25 that its new ruling was consistent with *Hughes,* "to the extent the instant question was considered in the latter case." As noted earlier, the court in *Guastello* adopted the view that a pardon obliterates the fact of conviction but the guilt remains.

Just as bad moral character is not restored by a pardon, *Hughes, supra,* and innocence is not restored thereby, *Guastello, supra,* neither does a pardon restore diminished credibility. And just as a pardoned conviction can constitute evidence of bad moral character, *Hughes, supra,* and can constitute evidence of guilt, *see Guastello,* so too can a pardoned conviction constitute evidence of diminished credibility. Whether a pardoned conviction can be used to impeach a witness's credibility was considered in the recent case of *State v. Zinn,* 562 S.W.2d 784, 788–89[7–9] (Mo.App.1978). That case did not involve the *Guastello* rule but the court at 788 stated: "Generally, in the absence of statute, a pardon does not preclude the use of the conviction for the purpose of impeaching the credibility of a witness. *Gurleski v. United States,* 405 F.2d 253, 266[25, 26] (5th Cir. 1968); *U. S. v. Denton,* 307 F.2d 336, 339[4] (6th Cir. 1962); 81 Am.Jur.2d 584 Witnesses § 579." The view that pardoned convictions can be used to impeach a witness's credibility is supported by authority from other jurisdictions including Rule 609(c) of the Federal Rules of Evidence (28 U.S.C.A.). This rule provides that pardoned convictions can be used to impeach the credibility of a witness unless the pardon was based on a finding of rehabilitation or innocence. (The pardon here was not based on either finding.) For other authority allowing impeachment by showing pardoned convictions, see cases cited in 98 C.J.S. Witnesses § 508, pp. 414–15 and 30 A.L.R.2d 893.

The judgment is affirmed.

GUNN, P. J., and KELLY, J., concur.